[Civ. No. 51291. First Dist., Div. Three. July 27, 1982.]

JOHN SMITH, Plaintiff and Appellant, v.
TELE-COMMUNICATION, INC., et al., Defendants and
Respondents.

**COUNSEL**

Charles Stuhr and Eugene P. McAuliffe for Plaintiff and Appellant.

Farrow, Schildhause & Wilson and Lynne M. Armstrong for Defendants and Respondents.

**O**PINION

**FEINBERG, J.**—This is an appeal from a judgment of dismissal entered after the court sustained without leave to amend the demurrer of the parent corporation defendant Tele-Communication, Inc. (TCI), and the directors of the subsidiary, Crystal Brite Television, Inc. (Crystal Brite) (the individual defendants). The fifth amended complaint filed by plaintiff John Smith, the minority shareholder of the subsidiary, alleged fraud, breach of fiduciary duties, and sought an accounting. For the reasons set forth below, we reverse.

The novel question is whether, without the consent of the minority shareholder, the parent was entitled to appropriate all of the tax savings produced as a result of consolidated tax returns filed with the subsidiary.

Accepting, as we must in the procedural posture of the case, the truth of the factual allegations of the fifth amended complaint, the following appears: TCI is a Colorado corporation doing business in California; Crystal Brite is a California corporation. Since July 1, 1970, Smith has been the owner and holder of 20 percent of the outstanding stock of Crystal Brite; between July 1, 1970, and October 30, 1975, TCI acquired the remaining 80 percent of the stock of Crystal Brite. Thereafter, the individual defendants, who were agents or employees of TCI, were elected as directors of Crystal Brite (directors).

Around October 31, 1975, the directors entered into a contract to sell all of the assets of Crystal Brite to State Video Cable, Inc., a California corporation. The contract price was $712,639.08; $600,139.08 in cash, and the balance of $112,500 by a five-year promissory note with interest at 10 percent per annum.

The effect of the sale was not communicated to Smith until after October 31, 1975. Smith was provided with work papers that indicated that the $562,092 gain on the sale of Crystal Brite would generate a tax liability of around $202,000. In reliance on these representations, Smith executed the necessary sale documents. Crystal Brite had no assets other than the proceeds of the sale.

Between March 1, 1976, and November 15, 1976, TCI and the directors represented that as a result of the sale, Crystal Brite had accrued a combined federal and state income tax liability of $279,013.85. Be-

tween July 1, 1976, and November 15, 1976, Smith was orally advised that the taxes would in fact not be paid because of the consolidated return filed by TCI. Smith relied on the prior written representation that a tax liability existed as a result of the sale of Crystal Brite's assets and would, in fact, be paid.

In May 1977, Smith received $19,152.61, his distributive share in the proceeds of the sale and the interest on the promissory note; thereafter he continued to receive his proportionate share of the payments received from the purchaser. No taxes were paid and $279,013.85 was paid directly to TCI on the theory that if Crystal Brite had filed separate income tax returns, this amount would have been paid to the federal and state governments.

As a result of the consolidated return, no tax liability was or would be incurred by Crystal Brite and TCI. If the $279,013.85 had not been paid to TCI, Smith's initial distributive share would have been increased by 20 percent or $55,802.77. Smith was therefore deprived of a portion of his distributive share of Crystal Brite. The acts and conduct of TCI and the directors in paying the entire tax savings to TCI were wilful, fraudulent and malicious and in violation of their fiduciary duties.

■ We are faced at the outset with the contention that even if any causes of action are stated, they are derivative in nature and cannot be asserted by Smith in his individual capacity. The criteria for derivative and individual actions were summarized by our Supreme Court in *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107 [81 Cal.Rptr. 592, 460 P.2d 464]. The action is in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property *without any severance or distribution among individual holders.* A derivative suit is brought to enforce a cause of action which the corporation itself possesses against some third party, a suit to recompense the corporation for injuries which it has suffered as a result of the acts of third parties. The management owes to the stockholders a duty to take proper steps to enforce all claims which the corporation may have. When it fails to perform this duty, the stockholders have a right to do so. The corporation nevertheless is the real plaintiff and it alone benefits from the decree; the stockholders derive no benefit therefrom except the indirect benefit resulting from a realization upon the corporation's assets. A stockholder's individual suit, on

the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.

Here, it is clear that Smith does not seek to recover on behalf of Crystal Brite. He does not contend that the diminishment in his share of the assets reflects an injury to Crystal Brite and a resultant depreciation in the value of its stock. As in *Ahmanson, supra*, 1 Cal.3d 93, the gravamen of the causes of action is injury to Smith as the only minority shareholder. Smith suffered sufficient injury to bring this action in his individual capacity. (Cf. *Crain* v. *Electronic Memories & Magnetics Corp.* (1975) 50 Cal,App.3d 509, 522-523 [123 Cal.Rptr. 419].) In any event, the cause of action based on the fraud is individual and not representative in character. (*Sheppard* v. *Wilcox* (1962) 210 Cal.App.2d 53, 64 [26 Cal.Rptr. 412]; *Campbell* v. *Clark* (1958) 159 Cal.App.2d 439, 443 [324 P.2d 55].)

The main question arises because the tax laws permit parent and subsidiary corporations to file consolidated returns. (Int.Rev. Code of 1954, § 1501 et seq.) The consolidated return allows the taxable income of one corporate entity to be offset by the losses of the other, and thus reduces the tax liability of the profitable entity. (Int.Rev. Code of 1954, § 172.)

However, the Internal Revenue Code does not address which entity ultimately is entitled to the benefit of a consolidated tax return. While the Internal Revenue Service (IRS) regulations provide that the parent corporation is the agent for the subsidiary, this agency relationship is for the convenience and protection of the IRS only and does not extend further.[1] In the absence of controlling federal law, state law governs the rights and responsibilities between a parent corporation and its subsidiaries. (See *Jump* v. *Manchester Life & Cas. Management Corp.* (8th Cir. 1978) 579 F.2d 449, 452; *In re Bob Richards Chrysler-Plymouth Corp.* (9th Cir. 1973) 473 F.2d 262, 265, cert. den., *sub nom., Western Dealer Management, Inc.* v. *England* (1973) 412 U.S. 919 [37 L.Ed.2d 145, 93 S.Ct. 2735].)

In this state, majority shareholders have fiduciary duties toward the minority shareholders as well as the corporation. As set forth in *Jones* v. *H. F. Ahmanson & Co., supra*, 1 Cal.3d 93, 108:

[1] The pertinent IRS regulation is Code of Federal Regulations, title 26, section 1.1502-77(a).

"Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority. *Any use* to which they put the corporation or their power to control the corporation *must benefit all shareholders proportionately .... [T]he burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness* from the viewpoint of the corporation .... The *essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.*" (Italics added.)

■ Here, Smith alleged that by means of the consolidated tax procedure, the taxable gain resulting from the sale of the subsidiary was offset against the losses of the parent, with the result that the subsidiary incurred no federal or state income tax. The subsidiary then transferred to the parent the entire tax savings of $279,013.85.

TCI and the directors argue that Smith has lost nothing by the transfer of this amount, which the subsidiary would have paid if it had filed a separate tax return instead of a consolidated return with the parent.

They rely on *Sinclair Oil Corporation v. Levien* (Del. 1971) 280 A.2d 717, modifying (Del. Ch. Ct. 1969) 261 A.2d 911 and *Getty Oil Company v. Skelly Oil Company* (Del. 1970) 267 A.2d 883, both based on the less stringent "business judgment" standard under which a court will not interfere with the judgment of a board of directors unless the plaintiff has met the burden of showing "gross and palpable overreaching" by the majority. (*Meyerson v. El Paso Natural Gas Company* (Del. Ch. Ct. 1967) 246 A.2d 789.) TCI has overlooked the basis of the court's conclusion in *Sinclair, supra,* 280 A.2d 717, namely, that there was no "overreaching" by the parent because the outside shareholders received the disputed dividends in proportion to their shareholdings. They also cite *Western Pacific R. R. Corp. v. Western Pacific R. Co.* (9th Cir. 1951) 197 F.2d 994, 1004, rehearing denied 197 F.2d 1012, reversed on other grounds, (1953) 345 U.S. 247 [97 L.Ed. 986, 73 S.Ct. 656], prior opinion affirmed (9th Cir. 1953) 206 F.2d 495, certiorari denied (1954) 346 U.S. 910 [98 L.Ed. 407, 74 S.Ct. 241]. In *Western Pacific, supra,* the business judgment rule was utilized to uphold the subsidiary's appropriation of the entire tax benefit generated by the parent's losses. *Western Pacific,* however, was decided before *Jones v. H. F. Ahmanson & Co., supra,* 1 Cal.3d 93, clarified the fiduciary duties of majority shareholders toward the minority in this state.

Here, Smith had no notice or knowledge of the consolidated tax procedure and transfer of funds to the parent until after he had executed the sale documents; when he consented to the sale, he did so on the basis of the written information provided, namely that the tax liability had been incurred and would be paid. He did not know then about the consolidated returns; presumably, TCI and the directors did.[2] As a result, Smith's distributive share of the assets of Crystal Brite was about $55,000 less than it would have been if the tax savings had been proportionately allocated. As the parent here received the entire tax saving, we think Smith's allegations have raised a question as to whether the allocation was inherently fair and equitable to him and entered in good faith under the standard of *Ahmanson, supra.* His complaint must be liberally construed with a view toward substantial justice. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032].) Where breach of fiduciary duty is alleged, the fiduciary has the burden of justifying his conduct. (*Credit Managers Assn.* v. *Superior Court* (1975) 51 Cal.App.3d 352 [124 Cal.Rptr. 242].)

Our conclusion is supported by the reasoning of *Case* v. *New York Central Railroad Co.* (Supreme Ct. 1962) 232 N.Y.S.2d 702, revd. (1963) 19 App.Div.2d 383 [243 N.Y.S.2d 620], revd. (1965) 15 N.Y.2d 150 [256 N.Y.S.2d 607, 204 N.E.2d 643]. In *Case, supra,* a minority shareholder challenged an allocation agreement whereby *80 percent* of tax savings resulting from the filing of consolidated returns was to be allocated to the parent. In finding that the agreement was fair, the *Case* court applied the "intrinsic fairness" test and looked at the total relationship to conclude that: 1) the parent's gain was not achieved at the cost of the subsidiary; and 2) the subsidiary received some direct benefit from the agreement as well as an indirect benefit since the parent remained a going concern. In the instant case, the entire tax saving was allocated to the parent without the knowledge or consent of the minority shareholder.

The record indicates that the trial court commented that Crystal Brite had made no contribution to the tax saving. Similarly, citing *In re Bob Richards, supra,* 473 Fed.2d 262, and *Jump* v. *Manchester, supra,* 579 F.2d 449, TCI and the directors argue that a subsidiary is entitled to share in a tax saving only if the subsidiary had the loss and therefore

---

[2]IRS regulations, Code of Federal Regulations, title 26, section 1.1502-75(c) provides that a group which files a consolidated return in the immediately preceding taxable year must do so for the following year unless, upon application of the parent and for good cause shown, IRS permits the filing of separate returns.

would have been entitled to it on its separate return. Here, of course, both corporations contributed to the tax saving. Fairness requires a proportionate sharing of the benefit.

Smith here alleged that without his knowledge or consent the tax savings produced by the consolidated return was entirely appropriated by the parent, and that his distributive share was reduced on the basis of a tax liability that in fact was not paid. We cannot say as a matter of law that the transaction was fair [3] and in good faith and equitable to Smith under *Ahmanson, supra.*

The judgment is reversed.

Scott, Acting P. J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied August 19, 1982, and respondents' petition for a hearing by the Supreme Court was denied October 28, 1982. Mosk, J., was of the opinion that the petition should be granted.

---

[3]We are aware that the use of an intrinsic fairness analysis has been criticized as at odds with the reality of the parent-subsidiary relationship, and that other standards have been suggested. (Motomura, *Protecting Outside Shareholders in a Corporate Subsidiary: A Comparative Look at the Private and Judicial Roles in the United States and Germany* (1980) 60 Wis. L.Rev. 61, 73-75; Schreiber & Yoran, *Allocating the Tax Saving Derived from Filing Corporate Tax Returns* (1977) 29 Baylor L.Rev. 243, 246-247; Brudney & Chirelstein, *Fair Share in Corporate Mergers & Takeovers* (1974) 88 Harv.L.Rev. 297, 323.)