[Nos. G026372, G026814. Fourth Dist., Div. Three. May 29, 2002.]

TOROS AVIKIAN et al., Plaintiffs and Appellants, v.
WTC FINANCIAL CORP. et al., Defendants and Respondents;
HARRY W. LOW, as Insurance Commissioner, etc., Movant and
Respondent.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

Law Offices of Gerald M. Shaw and Gerald M. Shaw for Plaintiffs and Appellants.

Stradling, Yocca, Carlson & Rauth, Richard C. Goodman and David E. Outwater for Defendants and Respondents.

Bill Lockyer, Attorney General, Lawrence K. Keethe and Steven J. Green, Deputy Attorneys General, for Movant and Respondent.

**OPINION**

**BEDSWORTH, J.**—Toros Avikian, Andre Horasanian, Peggy Jean Biales (as trustee for the Biales Family Trust dated September 24, 1988), Marion

Dore, Harold Humphrey, Robert MacIssac, and Edward Jowdy[1] appeal from the judgment dismissing their consolidated complaints and the order requiring them to pay fees and costs. They contend the dismissal of their complaints was improperly based upon the conclusion their claims were precluded by a restraining order issued in a proceeding initiated by the Insurance Commissioner to liquidate World Title Company, a title insurance company (World). We conclude the trial court was correct and the judgment must be affirmed.

Appellants allege they are shareholders of World,[2] and the gravamen of their complaints is the assertion that defendants mismanaged or looted the assets of World, culminating in its involuntary liquidation. Consequently, all of appellants' proposed claims are derivative in nature, and constitute claims made on behalf of World itself. Under the terms of the restraining order, such claims are vested in the liquidator (i.e., the Insurance Commissioner), and appellants were in violation of that order when they purported to bring them.

We also find no error in the award of fees and costs. In précis, appellants contend it was their allegations and settlement efforts in this case which prompted the Insurance Commissioner to obtain a settlement from some of the defendants named herein, which constituted a general benefit to the shareholders in World. Thus, appellants contend the settlement must be treated as though it *were* obtained in this case, and they should be rewarded as having generated a substantial benefit to the liquidated corporation. That argument would be a long shot even under the best of circumstances, since it will always be difficult—if not impossible—to characterize an involuntary dismissal as a win. But it is particularly problematic in this case, which constituted a violation of the liquidation restraining order from its inception and should never have been filed. Ultimately, the Insurance Commissioner expended a substantial effort to help ensure the termination of this litigation.

---

[1] The designation of appellants is discussed in an unpublished portion of the opinion.

[2] Technically, appellants allege they are shareholders in a company named WTC Financial Corp., which they describe as a "holding company" for various other entities, including World, the liquidated title insurance company. Their allegations are somewhat confused, however, because they refer to both the holding company and the subsidiary companies, collectively, as "WTC." In one pleading, they simply allege it is "WTC" which has been placed into liquidation. Appellants' failure to clearly distinguish between WTC, the holding company, and World, the title insurer, makes it difficult to ascertain whether they even have a direct ownership interest in the company which they allege was mismanaged and damaged by the defendants, and whether they would even have standing as shareholders to assert those claims. However, because that issue was not raised herein, and we agree the dismissal should be affirmed in any event, we will simply assume that appellants' ownership interest in one or more of the related entities accorded them standing to assert their derivative claims. For purposes of analysis, we will refer to the combined entity as World.

Under these circumstances, the trial court did not abuse its discretion in concluding appellants' pursuit of this litigation generated no substantial benefit to the corporation in general.

Finally, we also conclude appellants have failed to demonstrate the court committed an abuse of discretion in the amount of fees awarded. We consequently affirm both the judgment and the fee award.

Appellants are each shareholders in World. In June of 1995, World was placed into liquidation by the California Insurance Commissioner. The order imposing the liquidation included provisions specifying, among other things, that the Insurance Commissioner held title to all assets of World, including all "rights of action." The order also enjoined all persons from (1) "interfering with the possession, title and rights of [the Insurance Commissioner] in and to the assets of [World], and from interfering with the conduct of the liquidation and the winding up of the business of [World.]"; (2) from "obtaining preferences, judgments, attachments or other liens, or making any levy against [World] or its assets without the consent of this court . . ."; and (3) from "instituting or prosecuting any action or proceedings, at law or in equity including matters in arbitration, against [World] . . . without the consent of this court . . . ."

In April of 1997, appellants Toros Avikian and Andre Horasanian filed their first amended "derivative complaint" for negligence, alleging that defendants Michael Lowther, Jack Harris and Gary Nelson, the officers and directors of World, had negligently mismanaged the corporation, causing its demise. The complaint specifically referenced the liquidation proceeding asserting that seeking the corporation's approval of the litigation would be futile because of it.

As part of their response to the lawsuit, Lowther, Harris and Nelson filed a motion for an order requiring plaintiffs to furnish security to cover the reasonable attorney fees defendants would incur defending a shareholders' derivative suit, pursuant to Corporations Code section 800, subdivision (c). Ultimately, plaintiffs stipulated to the bond, and the court ordered them to post a bond in the amount of $50,000.

In July of 1997, all appellants initiated a second lawsuit. That case, while containing more causes of action, was nonetheless based upon the same general facts as the first lawsuit, and specifically alleged each appellant's status as a shareholder of World. The second lawsuit included the same defendants as the earlier Avikian and Horasanian lawsuit, plus additional corporate defendants who were accused of conspiring with the original

defendants and wrongfully obtaining World's assets. The court ordered the two cases consolidated in April of 1998.

In March of 1998, defendants moved to dismiss the complaints based in part on the pendency of the liquidation proceeding and the fact the assertion of the derivative claims herein violated the terms of the restraining order in that proceeding. Although the court's tentative decision was to consolidate the two cases and then grant the motion to dismiss, appellants prevailed upon it to reconsider dismissal. They explained to the court that they had been in contact with the Attorney General's Office (which was representing the Insurance Commissioner as liquidator), and that the commissioner was well aware of this litigation and had no opposition to it. Consequently, appellants asked the court to merely stay—as opposed to dismiss—the lawsuits, to allow appellants time to seek relief from the litigation prohibitions imposed in the liquidation. Appellants also argued that the second lawsuit was not derivative in nature, but instead rested upon the premise that World's majority shareholders violated duties owed directly to the minority shareholders. They also emphasized that their lawsuit sought no assets from World, focusing instead upon the officers and director's insurance policy issued to Lowther, Nelson and Harris.

This convinced the court. It explained: "I'm going to grant the motion to consolidate. I toyed with the idea of a stay versus dismissal, but I am persuaded to allow you to go ahead, go down to Commissioner Gould and seek relief from the stay. So I'm going to stay it rather than dismiss it."

Despite their assurances to the trial court that the Insurance Commissioner had no objection to the pendency of this litigation, appellants were unable to obtain his permission to allow it to continue. Appellants did, however, make efforts to obtain a settlement of their claims from National Union Fire Insurance Company, the officers and directors' liability insurer for Lowther, Harris and Nelson. Appellants assert they had made substantial progress, and had obtained a tentative agreement from National Union to settle the case for a minimum of $750,000, subject to substantial preconditions. But before they could conclude that agreement, the Insurance Commissioner reached his own agreement with National Union, to settle the claims for $115,000 and release Lowther, Harris and Nelson.

The liquidation proceeding, although initiated in Orange County, was later transferred to San Francisco. Consequently, the commissioner filed a motion in that court requesting an order precluding appellants from proceeding with their lawsuits, and approving his settlement with National Union. The commissioner argued that because World itself was a beneficiary of the

National Union officers and directors' liability policy, any proceeds of that policy stemming from the alleged misconduct of Lowther, Harris and Nelson causing the demise of World was properly an asset of World, and must be included within the liquidation proceeding.

Appellants filed their own motion, requesting an order relieving them from the restraining order and allowing their cases to proceed. They also filed an opposition to the application for settlement approval.

The court granted the commissioner's motion for an order enjoining the further prosecution of these cases, and denied appellants' motion for an order allowing their further prosecution. Appellants filed no appeal from those orders. The court subsequently issued an order approving the commissioner's settlement with National Union. Appellants filed an appeal from that order with the First District Court of Appeal, but that court dismissed their appeal for lack of standing. (*Low v. World Title Co.* (Oct. 4, 2000, A087809) [nonpub. opn.].)[3]

In the wake of the orders made by the San Francisco court in the liquidation proceeding, defendants renewed their motion to dismiss the complaints in Orange County. The commissioner joined in the renewed motion, and the court granted it, dismissing both complaints with prejudice. The court subsequently granted defendants' motion for fees pursuant to Corporations Code section 800—awarding them the full $50,000 of appellants' bond—and for costs as prevailing parties.

Appellants appealed from both the judgment of dismissal and the order awarding costs. We have consolidated their appeals.

I*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II

▮▮▮ Appellants contend that even assuming the Insurance Commissioner's settlement with National Union on behalf of defendants Lowther, Harris and Nelson is final, that settlement did not entirely preclude this action, because it did not encompass all defendants named in this case. But appellants miss the point. The real problem in this case is that their claims are all derivative in nature.

---

[3]Pursuant to Evidence Code section 452, subdivisions (a) and (d), respondents Lowther, Harris and Nelson have requested we take judicial notice of the opinion dismissing appellants' appeal from the approval of settlement. Because that fact disposes of appellants' contention the order approving settlement is not yet final, we grant the request.

*See footnote, *ante*, page 1108.

■ "A shareholder's derivative suit seeks to recover for the benefit of the corporation and its whole body of shareholders when injury is caused to the corporation that may not otherwise be redressed because of failure of the corporation to act. Thus, 'the action is derivative, i.e., in the corporate right, if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' [Citations.] '. . .The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.' " (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106-107 [81 Cal.Rptr. 592, 460 P.2d 464]; *PacLink Communications Intern., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [109 Cal.Rptr.2d 436]; *Smith v. Tele-Communication, Inc.* (1982) 134 Cal.App.3d 338, 343-345 [184 Cal.Rptr. 571].)

■ In *Jones v. H.F. Ahmanson, supra,* 1 Cal.3d 93, the Supreme Court first recognized the exception to the general rule that a shareholder must bring a derivative action in the name of the corporation. It held that if a minority stockholder was bringing suit against the majority stockholders for breach of fiduciary duty affecting them specifically, rather than the corporation in general, "an individual cause of action exists" because the injury was "not incidental to an injury to the corporation." (*Id.* at p. 107.) In that case, plaintiffs alleged that defendants had restructured the company's assets, using the device of a holding company, in a way that advantaged their own interests over other shareholders. The alleged acts did not harm the corporation itself, but instead only affected the way in which the parties owned it. Similarly, in *Smith,* the majority shareholder manipulated a transaction so that it would obtain a tax benefit in which the sole minority shareholder would not share, thus allowing the majority shareholder to retain a disproportionate share of the corporation's ongoing value. The court in *Smith* determined that an individual action was appropriate because the injury was done only to that shareholder, and did not affect the value of the corporation generally.

But that is not the case here. Instead, appellants' core claim is that defendants mismanaged World, and entered into self-serving deals to sell World's assets to third parties.[4] Those assertions—both the improper selling and purchasing of assets—amount to a claim of injury to World itself. Similarly, the second complaint contains allegations that defendants were aware that appellants had located an investor willing to rescue World and

---

[4]Those third parties are the other named defendants in the complaints. However, nothing in our record indicates those other defendants have ever appeared.

keep it in compliance with Department of Insurance capital requirements, thus benefiting all shareholders. But notwithstanding that knowledge, defendants chose to pursue their own self-serving arrangements, causing the demise of World. Again, those damages are nothing other than a claim of damage to the corporation generally. Appellants' own damages, the loss in value of their investments in World, were merely incidental to the alleged harm inflicted upon World *and all its shareholders.*

Because appellants are purporting to assert claims belonging to the corporate entity, the trial court properly dismissed their complaints. The restraining order issued in the liquidation proceeding specifically vested ownership of World's assets, including its rights of action, in the Insurance Commissioner, and precluded anyone other than the Insurance Commissioner from asserting claims *on behalf of* World. Thus, that order encompassed, and precluded, appellants' claims, no matter *whom* they were brought against.

Additionally, we note that the court in this case specifically directed appellants to the court overseeing the liquidation, to obtain relief from the automatic stay in that proceeding before continuing to prosecute these cases. In doing so, the court properly allowed the liquidation court to determine whether the claims asserted herein would "interfere with the conduct of the liquidation" as was prohibited by the liquidation restraining order. Appellants did so, but their request to continue this litigation was specifically denied by the liquidation court. If appellants wished to challenge that order, their remedy was an appeal in *that* case. (*In re Glacier General Ins. Co.* (1991) 234 Cal.App.3d 1549, 1553-1554 [286 Cal.Rptr. 262] [holding that an order denying relief from blanket stay order in an insurance liquidation action was directly appealable in that action].)

Appellants contend, however, that even if the San Francisco court could properly enjoin their claims, the Orange County court exceeded that mandate in dismissing them outright. According to appellants, Insurance Code section 1020, subdivision (c), allows the court in a liquidation proceeding to prevent "[t]he institution or prosecution of any actions," but does not authorize a dismissal of an already pending case. In the circumstances of this case, we disagree. As respondents have pointed out, the liquidation had already commenced, and the restraining order was already in place, when appellants commenced this action. Moreover, appellants were indisputably aware of those facts, as they referred to the liquidation in their initial pleading.

Consequently, appellants knew, before filing their complaints, that the commissioner was already the owner of all of World's causes of action, and

that appellants were prohibited from "instituting" any action or proceeding without the consent of the liquidation court. Nonetheless, they proceeded without obtaining that consent. Had they proceeded properly, we must presume the liquidation court would have refused permission, just as it did subsequently. Thus, by dismissing the complaints, rather than merely staying them, the Orange County court put appellants in exactly the position they would have been in had they acted in accordance with the liquidation order from the start. Any other result would have allowed appellants to benefit from their "litigate first, ask permission later" strategy.[5]

## III

Appellants also challenge the court's order awarding fees and costs to defendants as prevailing parties. Appellants contend that without their efforts in this litigation, the commissioner would not have obtained its settlement from defendants' insurer. Consequently, they contend this litigation resulted in a substantial benefit to World, thus preventing any award of fees to defendants pursuant to Corporations Code section 800,[6] and instead requiring the court to award fees to appellants.

Appellants base their argument on *Baker v. Pratt*, (1986) 176 Cal.App.3d 370, 377-378 [222 Cal.Rptr. 253], which explains that when litigation brought by individuals vindicates the rights of a larger but identifiable class of persons, resulting in a common fund or securing a substantial benefit to the group generally, the court may award fees to the plaintiffs from that common fund. The *Baker* court specifically mentions shareholder derivative suits as one type of litigation in which such an award might be appropriate. However, *Baker* is of no assistance to appellants, and instead merely highlights the fundamental flaw in their claim.

In *Baker*, the plaintiff prevailed in an action establishing that the defendant had misappropriated assets from their jointly owned corporations. But

---

[5]We do not mean to suggest that appellants willfully violated the restraining order. To the contrary, we assume appellants did believe, in good faith, that their claims somehow fell outside the ambit of the restraining order. We also recognize that it is easier, and cheaper, to simply file the complaint and wait for someone else to question it. However, where, as here, the contemplated litigation directly involves the liquidating entity, and seeks damages based upon its demise, we certainly would not encourage such a strategy or allow a party to gain an advantage from pursuing it.

[6]Corporations Code section 800, subdivision (c) provides, in pertinent part, that in any shareholder derivative action, the defendants may move the court for an order requiring plaintiffs to post a bond in an amount not to exceed $50,000, as security for defendants' reasonable expenses, including attorney fees, incurred in defending the action. To obtain the bond, defendants must show that "there is no reasonable possibility that the prosecution of the cause of action alleged in the complaint against the moving party will benefit the corporation or its shareholders."

while the trial court awarded fees to the plaintiff on the theory that he had provided a substantial benefit to the corporations generally, the appellate court reversed that order. As the court explained, the only beneficiary of the lawsuit was the plaintiff himself, since there were no shareholders in the corporations other than he and the defendant. "Respondent and appellant were the only shareholders in each of the corporate entities. It is clear that respondent's 'ultimate objective [was] not to secure or preserve a common fund but to establish personal adverse interests therein. In such a case fees may not be awarded.' (*Gabrielson* v. *City of Long Beach* (1961) 56 Cal.2d 224, 229 [14 Cal.Rptr. 651, 363 P.2d 883].)" (*Baker v. Pratt, supra,* 176 Cal.App.3d 370, 379.)

Thus, *Baker* makes clear that if corporate shareholders are seeking to advance their individual interests, rather than the interests of the corporation generally, no fees should be awarded on a common fund or substantial benefit theory. Consequently, to the extent appellants in this case were seeking to vindicate individual as opposed to derivative rights (an intention they have maintained even through appeal), they could not recover fees as a matter of law.

Moreover, although we rejected appellants' assertion that any of their claims were in fact individual, and concluded all their claims were derivative, we certainly could not conclude the trial court abused its discretion in refusing to award them fees on those claims. (See *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 317 [193 Cal.Rptr. 900, 667 P.2d 704] [holding that the trial court has discretion to determine whether a "significant benefit" to the public has been obtained, justifying fees on a private attorney general theory].) To the contrary, appellants' attempt to pursue derivative claims on behalf of World was a clear (even if not subjectively intentional) violation of the liquidation restraining order which vested ownership of all World's claims in the Insurance Commissioner. To the extent appellants believed such claims to be of value, they were required to proceed in cooperation with the Insurance Commissioner and the liquidation proceeding. Their failure to do so resulted in substantial additional litigation by the commissioner, necessitating his appearance in trial courts and appellate courts in both San Francisco and Orange Counties. Further, in those appearances, the commissioner disputed appellants' characterization of their role in the settlement process and the value of their contribution. Under these circumstances, the trial court was well within its discretion in concluding appellants provided no substantial benefit to World by their rogue litigation.

Finally, appellants contend that even if some award of fees to defendants was appropriate, the court erred in awarding an unreasonably high amount.

But in the absence of a clear abuse of discretion, we must defer to the judgment of the trial court on that issue. ■ "The 'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong'—meaning that it abused its discretion." (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1095 [95 Cal.Rptr.2d 198, 997 P.2d 511].) ■ Appellants have fallen far short of showing any such abuse.

In support of their assertion, appellants simply point to some examples of what they contend are excessive amounts of time spent by defendants' counsel on discrete tasks. But appellants' entire discussion of this issue occupies less than a page of their appellate brief, and they have provided us with no analysis of why the specific charges were unreasonable in the context of this case. For example, appellants inform us that defendants' counsel expended 37 hours in preparing a mediation brief. In light of that bare statement (and without so much as a copy of that brief in our record), appellants presumably expect us to conclude, as a matter of law, that no mediation brief should ever require 37 hours to prepare. We cannot do that.

Further, appellants' argument ignores the fact that the $50,000 in fees awarded against them (equivalent to the amount of the bond they posted for that purpose at the beginning of this litigation) is less than half of the nearly $114,000 in fees actually incurred by defendants in this case. Thus, even assuming defendants' counsel did spend excessive amounts of time on certain issues, appellants would have to identify about $64,000 in such excess fees before they would have cause to complain. They have not even attempted to do so.

The judgment is affirmed. Respondents are to recover their costs.

Rylaarsdam, Acting P. J., and Aronson, J., concurred.