Filed 3/4/13  Pastor v. Kennedy CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT PASTOR, | D059462 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2008-00085624-CU-CO-CTL) |
| JOHN KENNEDY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard E. L. Strauss, Judge.  Affirmed.

INTRODUCTION

A former member of a limited liability company appeals from a judgment on the pleadings in a damages action after the trial court granted motions in limine excluding evidence of liability and damages because the member sold his interest in the company in a separate, related dissolution action.  We conclude the trial court properly determined the final resolution of the dissolution action deprived the member of standing to maintain

any derivative claims and the doctrine of election of remedies barred the member from maintaining any individual claims in the damages action. We, therefore, affirm the judgment.

BACKGROUND

*Damages Action*

In June 2008 Robert Pastor filed a lawsuit against John Kennedy seeking damages and injunctive relief. The operative second amended complaint (complaint) asserted causes of action for fraud and deceit, breach of fiduciary duties, breach of contract, and intentional interference with prospective economic advantage.

*General Allegations*

The complaint generally alleged, in 2005 and January 2006, Pastor worked for J. Kelly Construction Supply (J. Kelly), a business of Kennedy's that imported and distributed stone and stone products. In February 2006 Pastor, Kennedy, and Raymond Shao formed a new company, East West Stone, LLC (East West Stone), to import and distribute stone and stone products from China. Kennedy contributed $240,000 to the company giving him a 60 percent ownership interest, Shao contributed $120,000 giving him a 30 percent ownership interest, and Kennedy contributed another $40,000 on Pastor's behalf giving Pastor a 10 percent ownership interest.

Kennedy was responsible for managing the company's finance, accounting, and recordkeeping functions, Shao was responsible for procuring and transporting stone products from China to the United States, and Pastor was responsible for overseeing the company's sales and marketing functions as well as managing the sales, office, and

2

warehouse staff. For these services, Kennedy was paid a monthly salary of $3,000, Shao was paid a monthly salary of $3,500, and Pastor was paid a monthly salary of $5,000.

Shortly after East West Stone's formation, Pastor discovered Kennedy was diverting East West Stone's sales revenue to J. Kelly's bank account. Between February and approximately June 2006, Kennedy diverted approximately $1 million.

Additionally, in November 2005, before East West Stone's formation, Kennedy purchased a new pickup truck for Pastor's use and registered it in the name of Kennedy Masonry, one of Kennedy's other companies. Once formed, East West Stone started making the payments for the truck; however, Kennedy never transferred the truck to East West Stone even though the company's operating agreement required all of its assets to be held in its name.

Around June 2007 without calling for a vote of the company's members, Kennedy replaced an information technology employee Pastor had hired. Kennedy had the new employee change the company's computer system and administrative passwords. Kennedy directed the new employee not to provide Pastor with the new passwords, so Pastor no longer had access to the system or the company's financial records contained in it. Kennedy then altered the company's financial records to cheat and defraud Pastor of his share of the company's profits.

Around June 2007 Pastor told Shao of his concerns about Kennedy's financial management practices. Around July 2007 Shao informed Kennedy of Pastor's concerns about Kennedy's accounting practices, his failure to take a vote before making decisions, and his acting adversely to the company's interests. The same month, Kennedy falsely

3

told Pastor that, as an owner of the company, Pastor could not be an employee and could no longer receive a salary. Instead, Kennedy told Pastor he could only receive a disbursement of profits from which he would have to pay his own taxes.

Around the same time, Kennedy fired the office manager Pastor had hired. The following month Kennedy fired another office worker Pastor had hired. Kennedy took both actions without calling for a vote of the company's members.

In February 2008 Kennedy told Shao and Pastor that East West Stone had earned a net profit of more than $600,000 for 2007. The same month, Pastor informed Shao of a $100,000 discrepancy he noticed in the company's financial records and Shao relayed the information to Kennedy.[1] Around the same time, Kennedy cancelled Pastor's cell phone and provided him with a new one. The new phone was registered in Kennedy's name, rather than in East West Stone's name.

In March 2008 Kennedy confronted Pastor regarding his remarks to Shao about the $100,000 discrepancy in the financial records. Kennedy denied any financial wrongdoing.

In early April 2008 Kennedy demanded Pastor to change the registration for East West Stone's website from Pastor's name to East West Stone's name. A few days later, Kennedy had the website passwords changed and refused to provide the new passwords

---

[1] In one paragraph, the complaint indicates Pastor directly informed Kennedy of the discrepancy. In another paragraph, the complaint indicates Pastor informed Shao of the discrepancy and Shao then informed Kennedy of it. The latter paragraph is more consistent with the other allegations in the complaint.

to Pastor. At the end of the month, Kennedy had the password for Pastor's e-mail account changed, precluding him from accessing his e-mails and the information stored in his e-mail account.

At the beginning of May 2008, Kennedy had Pastor's cell phone turned off and Pastor was unable to have it restored because it was in Kennedy's name. Around the same time, Kennedy notified Pastor in writing he was no longer a working partner of East West Stone, he must return the cell phone and the pickup truck, which was his only form of transportation, and he would no longer receive a salary. Over the next approximately two weeks, Kennedy contacted East West Stone's customers and vendors and advised them Pastor no longer had authority to speak for or make decisions for East West Stone.

The same month, Pastor reviewed East West Stone's financial records. The records showed a net profit of $80,000 for 2007, instead of $600,000 as Kennedy previously indicated. The records also showed nonexistent and exaggerated expenses. In addition, the records showed Pastor had approximately $130 in his capital account rather than the $40,000 Kennedy was supposed to have contributed on his behalf. Pastor believed Kennedy had the financial records altered to cheat Pastor out of company profits and the capital contribution.

*Claim-Specific Allegations*

Pastor's first cause of action for fraud and deceit specifically alleged Kennedy defrauded Pastor by falsely representing: (1) Pastor would own 10 percent of East West Stone and be entitled to 10 percent of its profits, (2) Kennedy would make Pastor's $40,000 capital contribution, (3) Pastor would receive a monthly salary of $5,000, (4)

5

Pastor could not receive a salary because he was an owner of the company, and (5) Pastor, Kennedy, and Shao would manage East West Stone together and would vote on all management decisions. The first cause of action further alleged Kennedy's fraud damaged the business, damaged Pastor's reputation, and caused Pastor to spend two years trying to make the business successful without receiving a salary or profits.

Pastor's second cause of action for breach of fiduciary duties specifically alleged Kennedy, as the company's financial manager, had a fiduciary duty to pay Pastor a $5,000 monthly salary as required by the operating agreement. Kennedy breached his fiduciary duty when he refused to pay Pastor's salary.

Pastor's third cause of action for breach of contract specifically alleged Kennedy breached East West Stone's operating agreement by making management decisions without conducting a vote of the company's members, by refusing to pay Pastor's salary, by failing to register the pickup truck in East West Stone's name, by depositing East West Stone's sales receipts into J. Kelly's bank account, and by ousting Pastor. The third cause of action further alleged Kennedy's actions irreparably injured Pastor as Kennedy might attempt to run the company into the ground and continue converting the company's assets to Kennedy's benefit against Pastor's interests.

Pastor's fourth cause of action for intentional interference with prospective economic advantage specifically alleged Kennedy intentionally disrupted Pastor's business relationship with East West Stone by terminating Pastor's management position, terminating his compensation for providing management services, and barring Pastor from the company's premises. The cause of action further alleged Kennedy's actions

6

resulted in Pastor's loss of compensation, benefits, and bonuses and diminished the value of Pastor's equity interest in the company.

*Dissolution Action*

A little over a year after Pastor filed his lawsuit seeking damages from Kennedy, he filed a second lawsuit seeking dissolution of East West Stone under Corporations Code[2] section 17351. Pastor based his dissolution action on substantially the same general allegations as his damages action. The parties finally resolved the dissolution action on December 10, 2010, by Kennedy purchasing Pastor's 10 percent interest in East West Stone for 10 percent of the company's value as of April 30, 2008, less certain appraisal expenses.

*Motions in Limine in Damages Action*

Shortly after final resolution of the dissolution action, Kennedy filed two motions in limine. Each motion sought to exclude all evidence of liability and damages and obtain judgment on the pleadings in the damages action.

The first motion asserted Pastor's acceptance of a buyout in the dissolution action was an election of remedies foreclosing his subsequent recovery for any individual claims in the damages action. The second motion asserted Pastor's acceptance of the buyout dispossessed him of any standing to maintain any derivative claims in the damages action. The trial court agreed with Kennedy's arguments and authorities, granted both motions, and entered judgment on the pleadings in Kennedy's favor.

---

[2] Further statutory references are also to the Corporations Code unless otherwise stated.

DISCUSSION

Pastor contends the trial court erred in granting the motions in limine and entering judgment on the pleadings because he is not asserting any derivative claims.  He further contends the doctrine of election of remedies does not preclude his individual recovery in the damages action for damages not compensated for in the dissolution action.

"In an appeal from a motion granting judgment on the pleadings, we accept as true the facts alleged in the complaint and review the legal issues de novo.  'A motion for judgment on the pleadings, like a general demurrer, tests the allegations of the complaint or cross-complaint, supplemented by any matter of which the trial court takes judicial notice, to determine whether plaintiff or cross-complainant has stated a cause of action. [Citation.]  Because the trial court's determination is made as a matter of law, we review the ruling de novo, assuming the truth of all material facts properly pled.' "  (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 166.)

I

*Existence of and Standing To Maintain Derivative Claims*

A claim is derivative if its gravamen " 'is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.' "  (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal. 3d 93, 106-107.)  Derivative claims include claims of company mismanagement and improper selling and purchasing of company assets.  (*Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1115-1116.)  Derivative claims also include claims for the fraudulent transfer of company

8

assets without compensation to the company. (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal. App. 4th 958, 964.) These claims are derivative because members of a limited liability company have no direct ownership interest in the company's assets. The members, therefore, cannot be directly injured when the company is deprived of assets. Instead, their injury is essentially a diminution in the value of their interest in the company due to the company's loss of assets and is incidental to the injury suffered by the company. (*Ibid.*)

Several of the claims in Pastor's complaint involve allegations of mismanagement of East West Stone and mishandling of its assets. As the above authorities indicate, these claims are derivative in nature. To have standing to maintain these claims, Pastor must have an ongoing interest in the company. "Because a derivative claim does not belong to the stockholder asserting it, standing to maintain such a claim is justified only by the stockholder relationship and the indirect benefits made possible thereby, which furnish the stockholder with an interest and incentive to seek redress for injury to the corporation. [Citations.] Once this relationship ceases to exist, the derivative plaintiff lacks standing because he or she 'no longer has a financial interest in any recovery pursued for the benefit of the corporation.' [Citations.] As one court put it, allowing a plaintiff to retain standing despite the loss of stock ownership would produce 'the anomalous result that a plaintiff with absolutely no "dog in the hunt" is permitted to pursue a right of action that belongs solely to the corporation.' " (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114.)

Once Pastor sold his interest in East West Stone as part of the dissolution action, he lost standing to pursue any derivative claims in the damages action. Accordingly, the

9

trial court properly granted Kennedy's motion in limine to exclude any evidence of liability and damages related to these claims.

II

*Application of Doctrine of Election of Remedies to Individual Claims*

Pastor's remaining individual tort and contract claims relate to Kennedy's failure to fulfill certain promises to Pastor reflected in the East West Stone's operating agreement. Whether the doctrine of election of remedies applies to bar these claims depends on whether the remedies for these claims are inconsistent with the remedies Pastor obtained in the dissolution action. "Broadly speaking, election of remedies is the act of choosing between two or more concurrent but inconsistent remedies based upon the same state of facts. Ordinarily a plaintiff need not elect, and cannot be compelled to elect, between inconsistent remedies during the course of trial prior to judgment. [Citations.] However, if a plaintiff has unequivocally and knowledgeably elected to proceed on one of the remedies he is pursuing, he may be barred recourse to the other. [Citation.] It is to such a situation that the doctrine of election of remedies pertains." (*Roam v. Koop* (1974) 41 Cal.App.3d 1035, 1039-1040; accord, *California Golf, L.L.C. v. Cooper* (2008) 163 Cal. App. 4th 1053, 1065; *Denevi v. LGCC, LLC* (2004) 121 Cal.App.4th 1211, 1218 (*Denevi*).)

Pastor's dissolution action sought a judicial decree dissolving East West Stone, winding up its business, liquidating its assets, and distributing the proceeds to members according to their membership interests. To avoid the dissolution, Kennedy purchased Pastor's interest in the company. Thus, the dissolution action and the remedy Pastor

10

received from it amounted to a termination of East West Stone's operating agreement, at least as to Pastor.

Pastor's damages action, on the other hand, sought damages for Kennedy's failure to fulfill certain promises reflected in the terms of the operating agreement. Obtaining such damages assumes the contract is still effective as to Pastor. Consequently, Pastor's damages action and the remedies sought in it are necessarily inconsistent with Pastor's dissolution action and the remedy he received from it. " 'Upon the breach of a contract a party thereto may treat it as rescinded, and if he has advanced money on it, bring an action for its recovery; or he may treat the contract as still in force and maintain an action for damages for the breach, but he cannot pursue both courses. If the facts exist which justify a rescission by one party, and he exercises his right and declares a rescission in some effectual manner, he terminates the contract, and it cannot thereafter be made the basis of an action for damages caused by breach of the covenants.' " (*Karapetian v. Carolan* (1948) 83 Cal. App. 2d 344, 347; see also *Akin v. Certain Underwriters at Lloyd's of London* (2006) 140 Cal.App.4th 291, 296 [recovery in an action based on disaffirmation of a contract bars recovery in an action based on affirmation of the contract].)

In analogous business contexts, courts have recognized persons in positions similar to Pastor's may elect between a dissolution remedy or a damages remedy. (See *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 564-565; *Navarro v. Perron* (2004) 122 Cal.App.4th 797, 802.) Implicitly, such person may not obtain both remedies.

11

*Denevi*, *supra*, 121 Cal.App.4th 1211, upon which Pastor relies, is distinguishable on this point. In *Denevi*, plaintiff held a personal contractual right to purchase certain real property. He and others formed a limited liability company to purchase and develop the property. Plaintiff contributed his purchase rights to the venture. The venture was not successful and the seller sold the property to another. (*Id.* at p. 1215.)

Plaintiff subsequently brought a derivative action on behalf of the company against some of the other investors for breach of fiduciary duty. He eventually obtained a $10 million judgment in the company's favor. (*Denevi*, *supra*, 121 Cal.App.4th at pp. 1215-1216.) Plaintiff also brought a damages action against some of the other investors alleging, among other claims that they fraudulently induced him to transfer his purchase rights to the venture. (*Id.* at p. 1215.) The defendants later obtained summary judgment in the damages action after the trial court apparently determined the action was barred by the doctrine of election of remedies. (*Id.* at pp. 1217-1218.)

The appellate court, however, concluded plaintiff's claims for fraudulent inducement were not barred by the doctrine of election of remedies for two reasons. First, the court concluded the fraudulent inducement claims were not based on the same facts as the derivative claims because the fraudulent inducement claims arose before plaintiff and the other investors actually formed the company. Second, the court concluded the remedies sought in the damages and derivative actions were not necessarily inconsistent with one another because they were sought on behalf of two distinct persons, plaintiff and the company, respectively. (*Denevi*, *supra*, 121 Cal.App.4th at pp. 1218-1219.)

12

In contrast, Pastor's dissolution and damages action are unquestionably based on the same operative facts. As Kennedy points out, the pleadings are nearly identical. In addition, except as discussed and addressed in part I, *ante*, the remedies sought in the dissolution action and in the damages actions are for Pastor's benefit. Accordingly, *Denevi* does not support a conclusion the doctrine of election of remedies is inapplicable to Pastor's individual claims in this case.

Since the remedies sought in the dissolution action are necessarily inconsistent with the remedies sought for Pastor's individual claims in the damages action, we conclude the trial court properly granted Kennedy's motion in limine to exclude evidence of liability and damages related to these claims. Given this conclusion and our conclusion in part I, *ante*, we further conclude the trial court properly entered judgment on the pleadings in Kennedy's favor.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

McCONNELL, P. J.

WE CONCUR:

NARES, J.

HALLER, J.

13