Filed 11/6/14  Murry v. Carras CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ELMER MURRY, JR.,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL J. CARRAS et al.,<br><br>Defendants and Respondents. | B251381<br><br>(Los Angeles County<br>Super. Ct. No. VC061416) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Margaret Miller Bernal, Judge.  Reversed.

John A. Bunnett for Plaintiff and Appellant.

Michael J. Carras and Daniel A. Conforti, in pro. per.; and for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

This is an appeal from the sustaining of a demurrer without leave to amend. Plaintiff Elmer Murry, Jr., sued his former attorneys, defendants Michael J. Carras and Daniel A. Conforti, as well as nonattorney Ricky Grayson and the individual defendants' business, Draft Picks Management Group, LLC. Murry alleged defendants wrongfully divested him of his interest in his business, Draft Picks Limited Liability Company (the LLC), and that they raided and mismanaged the LLC's assets. The LLC was a named plaintiff in the original complaint, but was omitted from the first amended complaint after the defendants pointed out, on demurrer to the original complaint, that the LLC's privileges were suspended for nonpayment of taxes. Defendants thereafter demurred to the first amended complaint on the basis that Murry, as an individual, lacked standing to assert claims belonging to the LLC. The trial court sustained the demurrer without leave to amend.

We find the first amended complaint states facts which would support individual claims by Murry that do not depend on the LLC's participation in the lawsuit, and we reverse.

## BACKGROUND

The original complaint was brought by plaintiff Elmer Murry, Jr., and his LLC, Draft Picks Limited Liability Company (the LLC), of which Murry was the sole member. The defendants are Michael J. Carras, Daniel A. Conforti, Ricky Grayson, and Draft Picks Management Group, LLC. The complaint alleged claims for fraud, cancellation of written instrument, rescission, imposition of constructive trust, conversion, breach of fiduciary duty, declaratory relief, and an accounting.

The LLC was the holding company for Murry's sports restaurant, Draft Picks Sports Grill. Murry retained the attorney defendants, Carras and Conforti, to represent him in a dispute with his business partner in another sports restaurant, Draft Picks Pizza Pub. Over the course of that representation, the attorney defendants gained access to confidential information about Murry's businesses, which they used to defraud Murry out of his interest in the LLC.

2

Defendants Carras and Conforti learned that Murry owed $205,000 to a friend, John Adger, and that Murry was soliciting investors to invest in the LLC so he could pay off the loan. They also learned that the Sports Grill was very profitable, netting over $300,000 in profits each year, with a fair market value of $1,000,000 to $1,200,000. Carras approached Murry with a plan, claiming Murry could pay off the Adger debt and retain his ownership of the LLC. Carras told Murry that if Murry gave him and the other individual defendants control of the LLC, that defendants would pay off the loan, and Murry could avoid bankruptcy.

On June 25, 2009, Carras and Conforti presented Murry with a contract to sign (the Memorandum of Understanding). They did not give him an opportunity to retain independent counsel to advise him concerning the contract. At this time, Murry had reduced the Adger debt to $195,000. The contract provided that Carras, Conforti, and Grayson would pay $90,000 to further reduce the debt, and in exchange they would acquire 51 percent of the LLC. Murry was required to pay the balance of $105,000 by July 31, 2009. If Murry failed to pay, he would relinquish all interest in the LLC to the individual defendants.

Specifically, the Memorandum of Understanding recited that John Adger had a security interest in the LLC's assets, and that Adger would perfect his security interest if not paid in full by July 31, 2009. Upon the payment of $90,000 to Adger by Carras, Conforti, and Grayson, "Murry will turn over all control [of] Draft Picks finances to Carras and Conforti" and Murry would no longer manage business's employees. Murry would remain responsible for overseeing building maintenance, ordering food and beverages, and promotional events. He was required to work at least 30 hours per week in the business. Carras and Conforti would be responsible for "all administration and financial matters, including audit and oversight, regulatory compliance and negotiating Draft Picks back debts."

In the event that Murry did not pay the remainder of the Adger loan before July 31, 2009, he would relinquish his ownership interest in the LLC, and would "execute all documents to effectuate this transfer." If the individual defendants elected to pay the

3

rest of the Adger loan, they could either elect to sell the LLC or to operate it, in which case they would retain Murry as an "employee/manager." In the event that Murry stayed on as an employee, he would be entitled to earn "sweat equity"; he could regain as much as 45 percent of his interest in the LLC if the business met certain profit goals.

The Memorandum of Understanding also recited that the LLC had an additional $150,000 in debt for which Murry would remain responsible.

The contract included a noncompetition clause, providing that Murry would not work for or have any involvement in any similar establishment, including his business, Draft Picks Pizza Pub. If Murry violated the noncompetition clause, he would lose any earned or contingent interest in the LLC.

Murry signed the Memorandum of Understanding individually, and as managing member of the LLC. However, the contract recited that it was only "between Elmer Murry [], Michael Carras [], Ricky Grayson [] and Daniel Conforti . . . ." The LLC was not listed as a "party" to the contract.

On August 1, 2009, after Murry failed to pay the remainder of the loan, defendants presented him with an Asset Purchase Agreement, purporting to transfer all of the LLC's assets to a new entity they had created, defendant Draft Picks Management Group. The agreement provided that defendants were not assuming any liabilities of the LLC, except those required by state or federal law. The agreement also provided for the establishment of an escrow, to effect transfer of the LLC's liquor license to the new entity. The Asset Purchase Agreement provided for a purchase price of $200,000, representing full satisfaction of Adger's promissory note. Murry again was not given an opportunity to retain independent counsel to advise him concerning the agreement.

The parties to the Asset Purchase Agreement were the LLC and defendant Draft Picks Management Group. Murry was not a party to the Asset Purchase Agreement. The Asset Purchase Agreement included a noncompetition clause, binding the LLC (the "seller" under the agreement) and its principal, Murry, from engaging in a similar business. The agreement included an integration clause, providing that "[t]his Agreement constitutes the entire agreement between the parties with respect to the subject matter of

4

this Agreement and supersedes all prior agreements, oral and written, between the parties hereto with respect to the subject matter of this Agreement." Plaintiff signed the agreement solely in his capacity as "Manager/Member" of the LLC. An addendum to the agreement, however, incorporated the terms of the Memorandum of Understanding which permitted Murry to be retained as an employee and to earn "sweat equity."

Ultimately, the defendants mismanaged the business and manipulated the books as part of a scheme to divest Murry of any ability to recapture his interest in the business.

Defendants demurred to the original complaint, contending the plaintiff LLC was suspended for failure to pay taxes, and therefore lacked the capacity to sue. Before the hearing on the demurrer, Murry filed a first amended complaint, which was nearly identical to the original complaint, but omitted the LLC as a plaintiff. The first amended complaint newly alleged that defendants caused the LLC's status to be suspended by failing to pay its tax liabilities, and therefore they were estopped from challenging Murry's standing.

Defendants again demurred, challenging Murry's standing to bring the claims, arguing that the claims belonged to the LLC and not to Murry individually, and that the damages sought belonged to the LLC. The demurrer also argued that the claim for breach of fiduciary duty failed because no fiduciary relationship was created by the "contingent" sweat equity interest given to Murry in the Asset Purchase Agreement. Defendants also requested that the court take judicial notice of various taxes and judgments owed by the LLC, that predated the parties' dealings.

The trial court sustained the demurrer without leave to amend, finding that the omission of the LLC as a plaintiff brought the first amended complaint under the sham pleading doctrine, and that "[t]he defect is fatal and cannot be cured by merely ignoring the existence of his own corporate entity." The trial court found Murry was not a party to the Asset Purchase Agreement, which contained an integration clause superseding the Memorandum of Understanding to which Murry was a party. From this, the court concluded that all the claims asserted by Murry belonged only to the LLC. The trial

court later awarded defendants their attorney fees. Murry timely appealed the order of dismissal.

## DISCUSSION

A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491.) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank*, *supra*, at p. 318.)

### 1. Standing

Defendants contend that Murry lacks standing to seek damages or other remedies for the wrongful taking of the LLC's assets. Essentially, they contend that Murry's claims are derivative, belonging to the LLC, rather than to Murry individually.

"In determining whether an individual action as opposed to a derivative action lies, courts look at 'the gravamen of the wrong alleged in the pleadings.' (*Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 [(*Nelson*)].)" (*PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 965 (*PacLink*).) "[A]n individual cause of action exists only if the damages were not *incidental* to an injury to the corporation. [Citation.]" (*Nelson*, *supra*, at p. 124.) "The cause of action is individual, not derivative, only '"where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder."' [Citation.]" (*Ibid.*) "In other words, it is the gravamen of the wrong alleged in the pleadings, not simply the resulting injury, which determines whether an individual action lies." (*Ibid.*)

6

Defendants rely on *PacLink*, *supra*, where the court held that the plaintiff LLC members' action was derivative because their complaint alleged assets of the LLC were transferred fraudulently to a new company, in which plaintiffs had no involvement, without any payment to the LLC. (*PacLink*, *supra*, 90 Cal.App.4th at p. 964.) Any injury to the plaintiffs was deemed to be incidental to the harm caused to the LLC itself, "[b]ecause members of the LLC hold no direct ownership interest in the company's assets, [therefore] the members cannot be directly injured when the company is improperly deprived of those assets." (*Id.* at p. 965, citation & fn. omitted.) The plaintiff LLC members claimed that the transfer of the assets had caused a "diminution in the value of their membership interest in the LLC," but because this reduction in value was directly attributed to the reduction in value of the LLC's assets, the claim was deemed to be derivative, and the individual plaintiffs lacked standing to assert the claims. (*Id.* at pp. 965-966.)

Murry maintains that the first amended complaint has stated individual claims, not claims belonging to the LLC, arguing that based on their fraud, the defendants initially acquired 51 percent of *Murry's* interest in the LLC (the Memorandum of Understanding), and then *Murry's* entire interest (the Asset Purchase Agreement), thereby wrongfully excluding him from his business. Murry contends the Memorandum of Understanding was between defendants and Murry in his individual capacity, and that the LLC was unaffected by its terms. He also contends that both the Memorandum of Understanding and Asset Purchase Agreement vested him with an individual and personal right to regain his shares of the LLC, and that defendants wrongfully cooked the books and boosted costs to ensure that the target profit margins would not be achieved.

In arguing his claims are individual, Murry relies on *Jones v. H.F. Ahmanson & Co.* (1969) 1 Cal.3d 93; *Smith v. Tele-Communication, Inc.* (1982) 134 Cal.App.3d 338; *Crain v. Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509; and *Low v. Wheeler* (1962) 207 Cal.App.2d 477. However, these cases involved individual claims by minority shareholders, for breaches of fiduciary duty by the majority shareholders. This is not a case where majority shareholders favored themselves to the minority's

7

detriment. Murry did not sue defendants in their capacity as owners of the LLC; rather, he describes them as "outsiders, seeking to defraud [Murry] of his interest in his company."

Nevertheless, we agree that Murry suffered individual harm separate from the harm allegedly suffered by the LLC. The first amended complaint alleges the attorney defendants violated their ethical obligations to Murry, and that defendants manipulated the books in an attempt to divest Murry of his sweat equity in the new entity. These facts support causes of action for breach of fiduciary duty and breach of the covenant of good faith and fair dealing owed specially to Murry, and perhaps other causes of action arising from duties owed to Murry separate from any duty owed to the LLC. (See *Nelson*, *supra*, 72 Cal.App.4th at p. 124 ["The cause of action is individual, not derivative, only ' "where it appears that the injury resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a shareholder" ' "].)

As for the claims asserted in the first amended complaint on behalf of the LLC, Murry urges that defendants should be estopped from challenging his standing to bring those claims, reasoning the amended pleading includes allegations that defendants caused the privileges of the LLC to become suspended. Murry has cited no authority supporting his position that equity can somehow overcome the strong public policy goals served by the laws prohibiting judicial action by suspended entities, or that he can circumvent the requirement of standing. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006) 136 Cal.App.4th 212, 217-218.) We are not persuaded Murry may pursue the derivative claims of the LLC.

Murry should be given the opportunity to amend his complaint to state claims based on the harm unique to him, seeking recovery of individual damages he suffered as a result of defendants' wrongdoing.

2.      **Motion for Judicial Notice**

Defendants have moved for judicial notice of four sets of documents. The first set includes various tax liens against the LLC, of which the trial court took judicial notice.

8

The other documents were never presented to the trial court, and include documents related to the transfer of the LLC's liquor license.  Finding that none of these documents is relevant to our disposition of this appeal, we deny the request.  (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [a court will not take judicial notice of irrelevant evidence].)

## DISPOSITION

The judgment is reversed.  Plaintiff and appellant shall recover his costs on appeal.


GRIMES, J.

We concur:

BIGELOW, P. J.



RUBIN, J.