Filed 9/2/21; Certified for Publication 9/22/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEONARD SCHRAGE, | B298119 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC579623) |
| v. | |
| MICHAEL SCHRAGE et al., | |
| Defendants and Appellants. | |

APPEAL from orders and a judgment of the Superior Court of Los Angeles County, Yvette M. Palazuelos and Daniel J. Buckley, Judges. Affirmed as modified in part and reversed in part.

Randall S. Waier for Defendants and Appellants.

Manatt, Phelps & Phillips, Benjamin G. Shatz, Kishan H. Barot; Markun Zusman Freniere Compton and Steven M. Goldberg for Plaintiff and Respondent.

# INTRODUCTION

Michael and Joseph Schrage appeal from the judgment and several orders entered in an action filed by their brother, Leonard Schrage, for involuntary dissolution of the family business and breach of fiduciary duty. After Michael and Joseph invoked their statutory right under the Corporations Code to buy Leonard's interests in the business pursuant to a court-ordered appraisal, the parties stipulated to add five limited liability companies to the eight limited liability companies, five corporations, and one limited partnership that were already subject to the appraisal and buyout proceeding. The trial court confirmed a valuation of Leonard's interests determined by appraisers and a court-appointed referee. The court also issued an alternative decree ordering that Michael and Joseph had to pay the appraised amount by a certain date and that, if they did not, the entities would be wound up and dissolved. Michael and Joseph appealed from that order, but voluntarily dismissed the appeal. They did not pay the buyout amount, and the court proceeded to wind up and dissolve the family business, including the five additional limited liability companies.

Meanwhile, Leonard proceeded on his cause of action for breach of fiduciary duty against Michael and Joseph. Following a court trial, the court found in favor of Leonard on that cause of action, awarded Leonard compensatory and punitive damages, and entered judgment in favor of Leonard and against Michael and Joseph. The court also denied various postjudgment motions.

Michael and Joseph argue the alternative decree to wind up and dissolve the family business and the "follow-up judgments

2

and orders" are void as a matter of law because the trial court lacked jurisdiction to dissolve the five limited liability companies the parties stipulated to include in the appraisal and buyout proceeding. We reject this argument because the trial court had fundamental jurisdiction and Michael and Joseph are estopped from collaterally attacking the alternative decree. Michael and Joseph also argue Leonard lacked standing to assert his cause of action for breach of fiduciary duty. We agree with this argument because Leonard's cause of action was derivative, not individual. Therefore, we affirm the order of dissolution (with a modification), reverse the award of damages for breach of fiduciary duty, and dismiss the appeals from nonappealable orders.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Leonard Sues His Brothers To Dissolve the Family Business and for Breach of Fiduciary Duty*

We pick up with the story in this (the parties' third) appeal where we left off following Michael and Joseph's appeal from an order awarding Leonard fees and expenses he incurred in a court-ordered appraisal under Corporations Code section 1800.[1] (See *Schrage v. Schrage* (Aug. 19, 2020, B288478) [nonpub. opn.] (*Schrage I*); see also *Schrage v. Schrage* (May 14, 2021, B307539) [nonpub. opn.] (*Schrage II*).) But first we repeat some of the basic facts of the case summarized in *Schrage I*.

---

[1] Undesignated statutory references are to the Corporations Code.

Leonard, Michael, and Joseph each owned a one-third interest in the Sage Automotive Group, a family-owned car dealership business founded by their father. In April 2015 Leonard filed this action against Michael, Joseph, and 14 corporate entities in the Sage Automotive Group to dissolve and wind up those entities. Leonard alleged Michael and Joseph engaged in a pattern of self-dealing and mismanaged the business by, among other things, misappropriating company assets to fund a separately owned car dealership and to pay for lavish personal expenses, making business decisions without Leonard's consent, and denying Leonard access to corporate books and records. Leonard sought to dissolve five corporations under section 1800, eight limited liability companies under section 17707.03, and one limited partnership under section 15908.02. Leonard also sought compensatory and punitive damages against Michael and Joseph for breach of fiduciary duty. (*Schrage I, supra*, B288478.)

In June 2016 Michael and Joseph filed a motion under sections 2000, 15908.02, and 17707.03 (collectively, the buyout statutes) to stay the dissolution causes of action and determine the value of Leonard's interest in the entity defendants. On August 23, 2016 the trial court stayed Leonard's three dissolution causes of action (one for each legal form of business entity) to allow Michael and Joseph to proceed on their election to purchase Leonard's interests in the business. The court did not stay Leonard's breach of fiduciary duty cause of action or Michael and Joseph's causes of action in their cross-complaint for breach of fiduciary duty, conversion, and recording confidential communications in violation of Penal Code sections 630 and 632. (*Schrage I, supra*, B288478.) The trial court also denied Michael

and Joseph's motion for judgment on the pleadings on Leonard's cause of action for breach of fiduciary duty, ruling Leonard had alleged an individual cause of action against his brothers, not a derivative cause of action on behalf of the entities in the Sage Automotive Group.

On September 19, 2016 the parties entered into a stipulation, approved by the court, to appoint retired judge Louis M. Meisinger as the referee to oversee and adjudicate all aspects of the appraisal process, including selecting the appraisers, determining the buyout price, and setting a deadline for Michael and Joseph to pay the buyout price. The order stated that "Judge Meisinger's determinations in this regard will be final, and all parties expressly waive any right to contest, challenge, or object to such rulings . . . ."

The parties entered into another stipulated order on January 5, 2017 to govern the appraisal and buyout proceeding. That order provided, among other things, the appraisal and buyout process would include the 14 entity defendants named in the first amended complaint, plus five additional limited liability companies (collectively, the buyout entities). The five limited liability companies that were not named defendants in any of the three causes of action for involuntary dissolution, but that were subject to the appraisal and buyout process by stipulation, were UCNP 3, UCNP 4, UCNP 5, UCNP 6, and UCNP 8 (collectively, the UCNP entities). To allow the appraisers to value each entity, the order required the parties to give the appraisers a variety of information, including organizational agreements, historical and projected financial data, and real estate holdings. The stipulation provided that, after the appraisers submitted their written reports to the parties and Judge Meisinger, the parties

5

would meet and confer to try to reach agreement on the valuation assigned to each entity and the overall value of Leonard's one-third interest in the buyout entities, "which shall constitute the buy-out price to be paid by Michael and Joseph to Leonard." If the parties were unable to agree on a buyout price, Judge Meisinger would set the price following a hearing.

On July 25, 2017, following a contested appraisal process, Judge Meisinger submitted a recommendation and proposed order confirming the value of Leonard's interests in the buyout entities was $40,237,000 and stating that, if Michael and Joseph did not pay Leonard that amount by September 11, 2017, the buyout entities (including the UCNP entities) would be wound up and dissolved. Judge Meisinger's recommendation also stated that, under the September 19, 2016 stipulation and order, his findings were "'final' and 'all parties expressly waive any right to contest, challenge, or object to such rulings before'" the court. On July 28, 2017 the trial court approved the referee's recommendation and entered it as the court's order and alternative decree.

Michael and Joseph did not pay Leonard by September 11, 2017, but they did file a notice of appeal from the July 28, 2017 order and alternative decree. Michael and Joseph subsequently filed requests to dismiss that appeal, and on May 31, 2018 this court granted those requests and dismissed the appeal.[2] Meanwhile, on September 27, 2017 the trial court appointed a

_____

[2] We take judicial notice of the May 31, 2018 order of dismissal in *Schrage v. Schrage* (B285049) under Evidence Code sections 452, subdivision (d), and 459. The notice of appeal in this case purports to appeal again from the July 28, 2017 order. We dismiss the second appeal from that order as untimely.

6

receiver to wind up and dissolve the buyout entities.  In *Schrage I* we modified and affirmed an order granting Leonard's motion for attorneys' fees and other expenses incurred in the appraisal process and in obtaining certain injunctive relief during that process.  (*Schrage I*, *supra*, B288478.)

B. *The Trial Court Enters a Net Judgment of Approximately $31 Million in Favor of Leonard and Against Michael and Joseph*

A bifurcated court trial began in April 2018 on Leonard's cause of action for breach of fiduciary duty and on Michael and Joseph's cross-complaint.  Following almost two months of testimony, the court on October 12, 2018 issued a tentative decision finding Michael and Joseph breached their fiduciary duties to Leonard, awarding Leonard compensatory damages offset by an amount for Leonard's unclean hands, finding Michael and Joseph acted with malice, oppression, and fraud, and ruling against Michael and Joseph on their cross-complaint.  The court began the punitive damages phase of the trial on November 26, 2018.

On March 12, 2019 the court entered judgment in favor of Leonard and against Michael and Joseph in the amount of approximately $31 million.  The judgment consisted of $962,903.13 on the first, second, and third causes of action for involuntary dissolution,[3] $24,418,473 in compensatory damages

---

[3]    Michael and Joseph appealed from this portion of the judgment in *Schrage I*, and we modified the amount to strike $561,393.63 in injunction-related attorneys' fees, leaving an

on Leonard's cause of action for breach of fiduciary duty offset by $3,506,412 for Leonard's unclean hands, and punitive damages of $5 million against Michael and $5 million against Joseph.

Michael and Joseph filed motions to vacate and amend the judgment and for a new trial. Michael and Joseph argued the trial court lacked subject matter jurisdiction and personal jurisdiction over the UCNP entities for the July 28, 2017 alternative decree and the September 27, 2017 order appointing a receiver to wind up and dissolve the buyout entities, which made those orders void as a matter of law; the "one judgment rule" and claim preclusion (which they referred to as res judicata) barred Leonard's cause of action for breach of fiduciary duty because the appraisal and buyout process should have included the value of that cause of action; the trial court erred in awarding compensatory and punitive damages on Leonard's cause of action for breach of fiduciary duty; and Michael and Joseph's affirmative defense of unclean hands precluded any recovery by Leonard on his cause of action for breach of fiduciary duty.

The trial judge was unavailable to hear Michael's and Joseph's postjudgment motions, and another judge heard them. Following a hearing, the court denied the motions, and Michael and Joseph timely appealed from the judgment and the postjudgment orders.[4]

_____

award of $401,509.50 for referee fees and appraisal-related attorneys' fees. (*Schrage I, supra*, B288478.)

[4]  Joseph Schrage died after the trial court entered judgment in this action, and the executor of his estate filed the notice of appeal.

8

**DISCUSSION**

Michael and Joseph argue the alternative decree and subsequent orders and judgment are void as a matter of law because the trial court lacked jurisdiction to order the appraisal and dissolution of the UCNP entities; Leonard lacked standing to assert his cause of action for breach of fiduciary duty because his claims were derivative, not individual; the trial court exceeded its jurisdiction by failing in the appraisal and buyout process to assess the economic impact of the cause of action for breach of fiduciary duty; the election of remedies doctrine, the "one judgment rule," and claim preclusion barred Leonard's cause of action for breach of fiduciary duty; the trial court erred in awarding compensatory and punitive damages for Leonard's cause of action for breach of fiduciary duty; and Michael and Joseph's affirmative defense of unclean hands precluded any recovery by Leonard for his cause of action for breach of fiduciary duty. We conclude the standing argument has merit, the jurisdictional argument does not, and we do not reach the other issues.

A.    *The Buyout Statutes*

As we explained in *Schrage I*, the "statutory buyout provisions of the Corporations Code provide a defendant in an involuntary dissolution action with a mechanism for avoiding dissolution by purchasing the plaintiff's shares or other interests. [Citations.] Section 2000, subdivision (a), which applies to corporations, states that, '[i]n any suit for involuntary dissolution, . . . the corporation or, if it does not elect to purchase, the holders of 50 percent or more of the voting power of the

9

corporation (the "purchasing parties") may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs or by the shareholders so initiating the proceeding (the "moving parties") at their fair value.' If the parties are unable to agree on the fair value of the shares, and the purchasing parties post a bond with sufficient security to pay the moving parties' estimated reasonable expenses, 'the court upon application of the purchasing parties . . . shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties.'" (*Schrage I*, *supra*, B288478.)

"Section 2000, subdivision (c), prescribes the procedure for determining the fair value of the shares and the relief available to the moving parties if the shares are not purchased. That provision states in relevant part: 'The court shall appoint three disinterested appraisers to appraise the fair value of the shares owned by the moving parties, and shall make an order referring the matter to the appraisers so appointed for the purpose of ascertaining the value. . . . The award of the appraisers or of a majority of them, when confirmed by the court, shall be final and conclusive upon all parties. The court shall enter a decree, which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree.' Sections 17707.03 and 15908.02 contain substantively identical buyout provisions for limited liability companies and limited partnerships, respectively." (*Schrage I*, *supra*, B288478.)

"The statutory buyout procedure is 'a special proceeding' that, 'once initiated, "supplants" a cause of action for involuntary

10

dissolution.' [Citations.] 'In such a proceeding, [the] purchasing parties aspire to buy out the moving party, with minimal expenditure of time and money that would otherwise be spent in litigation, in order to preserve the corporation. If they . . . cannot pay the purchase price, or decide not to do so, then both sides must walk away, receiving pro rata the proceeds resulting from dissolution of the corporation. On the other hand, if the purchasing parties tender the amount determined by the court, the moving party cannot reject the share price as being too low.' [Citation.] The buyout procedure 'does not determine whether the corporation should be dissolved, but instead, provides the plaintiff and defendant with a statutory remedy without [a] trial' on the merits." (*Schrage I*, *supra*, B288478; see *Ontiveros v. Constable* (2018) 27 Cal.App.5th 259, 277 ["A value of the corporation's stock is determined and then the defendant has a period by which it is to pay the plaintiff for its stock. If the defendant does not do so, a judicial decree will dissolve the corporation."].)

B.   *Michael and Joseph Cannot Collaterally Attack the Alternative Decree*

Michael and Joseph contend the alternative decree and "confirming judgments and orders" are void and unenforceable because the trial court lacked subject matter jurisdiction to order the appraisal and buyout of the five UCNP entities.[5] The

---

[5]   Michael and Joseph do not argue the trial court lacked personal jurisdiction over the UCNP entities, even though the two brothers claim they made that argument in their motions for a new trial and for an order vacating the judgment, and even

11

alternative decree, however, was an appealable order. (See § 2000, subd. (c); *Cotton v. Expo Power Systems, Inc.* (2009) 170 Cal.App.4th 1371, 1376; *Dickson v. Rehmke* (2008) 164 Cal.App.4th 469, 476.) Michael and Joseph had an opportunity to challenge that order in their appeal from the alternative decree, but they dismissed the appeal, making that order final. (See Code Civ. Proc., § 913; *Estate of Sapp* (2019) 36 Cal.App.5th 86, 100; *Patchett v. Bergamot Station, Ltd.* (2006) 143 Cal.App.4th 1390, 1396; *Schrage I, supra*, B288478.) Nevertheless, Michael and Joseph can challenge it in this appeal if it is a void order, because a party may collaterally attack a void judgment or order at any time. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 830, fn. 9; accord, *Deutsche Bank National Trust Co. v. Pyle* (2017) 13 Cal.App.5th 513, 526-527; see Code Civ. Proc., § 473, subd. (d) ["[t]he court . . . may, on motion of either party after notice to the other party, set aside any void judgment or order"].)

A judgment or order that is not void but "merely" voidable, however, is generally not subject to collateral attack. (See *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 (*American Contractors*); *Adoption of Myah M.* (2011) 201 Cal.App.4th 1518, 1531.) "When a court has fundamental jurisdiction, but acts in excess of its jurisdiction, its act or judgment is merely voidable. [Citations.] That is, its act or judgment is valid until it is set aside, and a party may be precluded from setting it aside by 'principles of estoppel, disfavor of collateral attack or res judicata.' [Citation.] Errors which are merely in excess of jurisdiction should be challenged directly, for

---

though their opening brief on appeal cites law that a judgment is void if the trial court lacked personal jurisdiction.

12

example by motion to vacate the judgment, or on appeal, and are generally not subject to collateral attack once the judgment is final unless 'unusual circumstances were present which prevented an earlier and more appropriate attack.'" (*American Contractors*, at p. 661; see *Adoption of Myah M.*, at p. 1531 ["A claim that does not concern the trial court's fundamental subject matter jurisdiction is waived if not timely asserted."].) We review de novo the trial court's ruling that neither the alternative decree nor the judgment is void for lack of subject matter jurisdiction. (See *Mack v. All Counties Trustee Services, Inc.* (2018) 26 Cal.App.5th 935, 940; *Talley v. Valuation Counselors Group, Inc.* (2010) 191 Cal.App.4th 132, 146.)

       1.    *Michael and Joseph Cannot Collaterally Attack the Alternative Decree as a Void Order Because the Trial Court Had Fundamental Jurisdiction To Adjudicate the Buyout Proceeding*

       a.    *Applicable Law*

"A judgment or order is void when there is an absence of fundamental jurisdiction. However, an act in excess of jurisdiction simply renders an order of judgment voidable. 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of . . . authority over the subject matter or the parties. . . .' [Citation.] In contrast, a court acts in excess of jurisdiction in the broader sense 'where, though the court has jurisdiction over the subject matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.'

[Citation.] 'Action "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" . . . is not void, *but only voidable.*'" (*Adoption of Myah M.*, *supra*, 201 Cal.App.4th at p. 1531; see *In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56 ["A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable."]; see also *American Contractors*, *supra*, 33 Cal.4th at pp. 660-661; *People v. North River Ins. Co.* (2020) 58 Cal.App.5th 300, 311-313; *Torjesen v. Mansdorf* (2016) 1 Cal.App.5th 111, 117 (*Torjesen*).)

"Subject matter jurisdiction . . . is the power of the court over a cause of action or to act in a particular way." (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1035; see *People v. Superior Court (Mitchell)* (2010) 184 Cal.App.4th 451, 458.) "[L]ack of subject matter jurisdiction means the entire absence of power to hear or determine a case; i.e., an absence of authority over the subject matter." (*Guardianship of Ariana K.* (2004) 120 Cal.App.4th 690, 701; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 (*Abelleira*) ["A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional provision."]; 2 Witkin, Cal. Procedure (2020 supp.) Jurisdiction, § 44 ["A court without authority to try actions of the type or class to which the action belongs is 'not competent,' i.e., it has no jurisdiction of the subject matter."].)

"Subject matter jurisdiction is conferred by constitutional or statutory law." (*Guardianship of Ariana K.*, *supra*, 120 Cal.App.4th at p. 701.) In general, article VI, section 10 of

14

the California Constitution confers broad authority on the superior courts.  (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512; see Cal. Const., art. VI, § 10 [except as otherwise provided, "[s]uperior courts have original jurisdiction in all other causes"]; see also Code Civ. Proc., § 410.10 [a "court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"].)  "A court does not necessarily act without subject matter jurisdiction merely by issuing a judgment going beyond the sphere of action prescribed by law.  'Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis,* are in excess of jurisdiction.'"  (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1101; see *American Contractors*, *supra*, 33 Cal.4th at p. 661 ["''[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction.''''"].)

> b.    *The Buyout Statutes Conferred Subject Matter Jurisdiction for the Buyout Proceeding*

Michael and Joseph do not argue the trial court lacked subject matter jurisdiction over Leonard's causes of action for involuntary dissolution.  Nor do they contend the court lacked subject matter jurisdiction to adjudicate the appraisal and buyout proceeding for the 14 entity defendants Leonard named in those causes of action or to dissolve them.  They argue only that the

15

"addition of the UCNP entities in the buyout proceedings, when they were not the subjects of a pending judicial dissolution cause of action, rendered the alternative decree, and ensuing judgments and orders," void.[6]

To determine whether an error is jurisdictional in a fundamental sense, courts "look first to the language of the statute." (*American Contractors, supra*, 33 Cal.4th at p. 661; see *In re Marriage of Goddard, supra*, 33 Cal.4th at p. 54; *People v. North River Ins. Co., supra*, 58 Cal.App.5th at p. 313.) For

---

[6] We do not address Michael and Joseph's argument the trial court lacked subject matter and personal jurisdiction to order "*post judgment*, Sage Vermont, *nunc pro tunc*, as a 'dissolved entity' under the control of the receiver to be wound up." There is no indication in the record Michael and Joseph appealed from that order, which was issued on August 16, 2019, after Michael and Joseph filed their notices of appeal in this action, and which is not included in the record of this appeal. Even assuming the August 16, 2019 order was appealable, we do not have jurisdiction to review it in this appeal. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8 ["if an order is appealable, [an] appeal must be taken or the right to appellate review is forfeited"];*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1071 [same].) In addition, the vast majority of Michael and Joseph's argument appears in a footnote. (See *Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947 ["Footnotes are not the appropriate vehicle for stating contentions on appeal."]; *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160 [raising an issue in a two-page footnote "is a violation of court rules that require arguments to be contained in discrete sections with headings summarizing the point"]; see also *Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 419-420 [an "appellant cannot bury a substantive legal argument in a footnote and hope to avoid waiver of that argument"].)

example, in *American Contractors* the Supreme Court considered whether the trial court lacked fundamental jurisdiction when it declared a bond forfeited without complying with two "jurisdictional prerequisites" in Penal Code sections 1305 and 1306. (See generally *People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 710 [describing the jurisdictional prerequisites of Penal Code sections 1305 and 1306].) The Supreme Court observed that neither statute declared the surety released or the bond exonerated if the court failed to comply with those prerequisites under the circumstances in that case. (*American Contractors*, at p. 661.) "Based on what sections 1305 and 1306 said and did not say, the Supreme Court [in *American Contractors*] concluded the failure 'to follow the procedural requirements to enter judgment properly did not affect the court's statutory control and jurisdiction over the bond.' [Citation.] Accordingly, the court held the trial 'court's failure to comply with section 1306 . . . "does not effect a fundamental loss of jurisdiction, i.e., 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter of the parties.'"'" (*North River Ins. Co.*, at p. 314, quoting *American Contractors*, at pp. 662-663.)

The buyout statutes established the court's subject matter jurisdiction to conduct and adjudicate the buyout proceeding and to dissolve the entities subject to that proceeding. As discussed, the relevant language of section 2000 states: "In any suit for involuntary dissolution, . . . the holders of 50 percent or more of the voting power of the corporation (the 'purchasing parties') may avoid the dissolution of the corporation and the appointment of any receiver by purchasing for cash the shares owned by the plaintiffs . . . (the 'moving parties') at their fair value. [¶] . . . [¶]

. . . [T]he court upon application of the purchasing parties, . . . in the pending action . . . , shall stay the winding up and dissolution proceeding and shall proceed to ascertain and fix the fair value of the shares owned by the moving parties.  [¶] . . . The court shall enter a decree, *which shall provide in the alternative for winding up and dissolution of the corporation unless payment is made for the shares within the time specified by the decree.*  If the purchasing parties do not make payment for the shares within the time specified, judgment shall be entered against them and the surety or sureties on the bond for the amount of the expenses (including attorneys' fees) of the moving parties." (§ 2000, subds. (a)-(c), italics added; see §§ 15908.02, 17707.03.)  Thus, if the purchasing parties follow through on buying out the minority shareholder (or member or partner), the buyout proceeding successfully avoids litigation and the dissolution of the corporation.  But if the purchasing parties are unable or unwilling to buy out the minority shareholder, the entity subject to the proceeding is wound up and dissolved.

In compliance with the buyout statutes, the trial court on August 23, 2016 granted Michael and Joseph's motion to stay Leonard's involuntary dissolution causes of action, thereby establishing subject matter jurisdiction for the buyout proceeding.  The court still had subject matter jurisdiction over the proceeding on January 5, 2017, when Michael, Joseph, and Leonard stipulated to include the UCNP entities in the proceeding.  And the court had subject matter jurisdiction on July 28, 2017, when it issued the alternative decree providing that the entity defendants and the UCNP entities would be wound up and dissolved if Michael and Joseph did not pay Leonard by September 11, 2017.

The buyout statutes do not address circumstances where, as here, the owners of an entity all agree to submit that entity (or, here, several entities) to an existing buyout proceeding over which the trial court undoubtedly had authority.  But considering the statutes' silence on this issue, the broad authority conferred on superior courts (including the power to dissolve companies organized under the laws of California), and cases holding that neither the addition of nonparties to an action nor the violation of certain statutory requirements (even where "jurisdictional") divests a court of its subject matter jurisdiction, we conclude the addition of the UCNP entities to the existing buyout proceeding did not undermine the court's "inherent authority to deal with the case or matter before it."  (*Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 680; see *American Contractors, supra*, 33 Cal.4th at p. 661; *Abelleira, supra*, 17 Cal.2d at p. 288; *Conservatorship of O'Connor* (1996) 48 Cal.App.4th 1076, 1087-1088.)

For example, in *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014 the court held the trial court adjudicating a personal injury action had subject matter jurisdiction to adjudicate a fee dispute between the plaintiff and a nonparty court reporting company.  Even though the dispute "was not within the scope of the pleadings and pertained to a third party" (*id.* at p. 1028), the matter involved a right created by California discovery statutes and the court's authority to control the conduct of its ministerial officers, and the dispute was "typical of those commonly adjudicated in California courts" (*id.* at pp. 1029-1030).  Similarly, in *Lovett v. Carrasco* (1998) 63 Cal.App.4th 48 the court held the trial court had subject matter jurisdiction to adjudicate third parties' medical lien

19

claims in an underlying personal injury action. (*Id.* at p. 54.) The court in *Lovett* stated that "adjudication of claimants' medical lien claims is clearly within the general subject matter jurisdiction of the superior court." (*Ibid.*) Thus, the "jurisdictional issue [was] whether the court acted in excess of its jurisdiction by adjudicating the liens in the [underlying] action," not whether the court had fundamental jurisdiction. (*Ibid.*; see *Law Offices of Stanley J. Bell v. Shine, Browne & Diamond* (1995) 36 Cal.App.4th 1011, 1021-1023 [trial court in an underlying personal injury action had subject matter jurisdiction to issue an order denying a claim under an attorney's lien, even though contractual liens generally are enforced in an independent action by the attorney against the client].)

Nor did the fact the trial court arguably acted contrary to the authority conferred by the buyout statutes divest the court of subject matter jurisdiction. In *Torjesen* the plaintiff judgment creditor filed a petition under the Enforcement of Judgments Law (Code Civ. Proc., §§ 680.010 et seq.) to invalidate a third party claim on a deceased judgment debtor's property. (*Torjesen*, *supra*, 1 Cal.App.5th at p. 113.) The Enforcement of Judgments Law, however, provides that, "[a]fter the death of the judgment debtor, enforcement of a judgment against property in the judgment debtor's estate is governed by the Probate Code, and not by this title." (Code Civ. Proc., § 686.020.) The trial court nevertheless granted the judgment creditor's petition under the wrong statute. (*Torjesen*, at p. 113.) The third party claimant did not appeal from that ruling, but two years later filed a motion to vacate the order, arguing the trial court did not have jurisdiction to proceed under the Enforcement of Judgments Law. (*Ibid.*) The court in *Torjesen* rejected that argument: "Without

20

question, the superior court has jurisdiction over disputes related to the enforcement of judgments and the validity of claims to property that has been levied upon.  [Citations.]  The statutory scheme does not deprive the superior court of jurisdiction over these matters.  It simply limits the manner in which a judgment creditor may enforce a judgment against a deceased judgment debtor's property." (*Id.* at p. 118.)  The court in *Torjesen* agreed that the superior court erred in allowing the judgment creditor to proceed under the Enforcement of Judgments Law, but the court held "that error was an act in excess of jurisdiction" rendering the order voidable, not void for lack of subject matter jurisdiction. (*Ibid.*; see *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 97-98, 99 [default judgments erroneously entered in favor of a collection agency that knowingly filed "statutorily inadequate complaints" in the wrong counties were not void for lack of "'jurisdiction' in the fundamental sense"]; *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics*, *supra*, 61 Cal.App.4th at p. 680 [order compelling arbitration in the absence of an arbitration agreement, in violation of Code of Civil Procedure section 1281, was only an act in excess of jurisdiction]; *In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 718 ["while the court's award [granting joint custody to a nonbiological parent] may have been beyond its statutory authority, the court did not lack jurisdiction in the fundamental sense"].)

Thus, even if the trial court erred by including the five UCNP entities in the appraisal and buyout proceeding, the trial court undoubtedly had subject matter jurisdiction over the proceeding.  Michael and Joseph do not contest the court's jurisdiction to hear and determine the case with regard to the 14 entity defendants.  Neither the voluntary addition of the five

UCNP entities to the buyout proceeding nor the trial court's purported error in issuing the alternative decree over entities that were not parties to the involuntary dissolution causes of action disturbed or eliminated the court's subject matter jurisdiction. At most, the alternative decree was an act in excess of the statutory authority conferred by the buyout statutes. (See *Barquis v. Merchants Collection Assn.*, *supra*, 7 Cal.3d at p. 99; *People v. North River Ins. Co.*, *supra*, 58 Cal.App.5th at p. 314.)

The cases cited by Michael and Joseph do not hold otherwise. In general, those cases stand for the proposition that the court's power to conduct a special proceeding under the buyout statutes depends on the existence of a cause of action for involuntary dissolution. (See *Boschetti v. Pacific Bay Investments, Inc.* (2019) 32 Cal.App.5th 1059, 1066 ["'the right of buyout under section 15908.02 is dependent upon a cause of action for judicial dissolution'"]; *Ontiveros v. Constable*, *supra*, 27 Cal.App.5th at p. 271 ["a party's right under section 2000 depends entirely on the existence of a cause of action for involuntary dissolution of a corporation"]; *Kennedy v. Kennedy* (2015) 235 Cal.App.4th 1474, 1481 ["[u]pon dismissal of [a] dissolution cause of action, there is no dissolution to avoid and, thus, no right to buy out plaintiff's interests" under section 2000]; *Panakosta, Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 635 ["[w]ithout a pending judicial dissolution action, the trial court was without jurisdiction to allow the buyout petition to proceed"]; *Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 383 ["no court has inherent authority to decide a matter for which there is no legally recognized cause of action"]; *Housing Group v. United Nat. Ins. Co.* (2001) 90 Cal.App.4th 1106, 1107-1108 [pending litigation is required

before parties may stipulate to the appointment of a judicial referee or temporary judge to secure a settlement enforceable by the court].) Unlike those cases, here there were causes of action for involuntary dissolution pending at the time Michael and Joseph moved to stay them and initiate the buyout proceeding and at the time Michael, Joseph, and Leonard agreed to add the five UCNP entities to the pending proceeding.

Michael and Joseph also argue the trial court could not have subject matter jurisdiction unless Leonard added the UCNP entities as defendants to a pending cause of action. But third parties may appear and be bound by a judgment without being named in a complaint. (See *People ex rel. Becerra v. Superior Court* (2018) 29 Cal.App.5th 486, 493; *Fireman's Fund Ins. Co. v. Sparks Construction, Inc.* (2004) 114 Cal.App.4th 1135, 1145-1147; *In re Marriage of Williams* (1985) 163 Cal.App.3d 753, 759-760.) As stated, Michael and Joseph do not argue the trial court lacked personal jurisdiction over the five UCNP entities, and in any event the UCNP entities' participation in the appraisal and buyout proceeding without objection (to this day) acknowledged the authority of the court in that proceeding. (See *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 139 ["'a party may voluntarily submit himself to the jurisdiction of the court, or may, by failing to seasonably object thereto, waive his right to question jurisdiction over him'"]; *Becerra*, at p. 493 ["a person can become a party to an action, even if not named in the complaint, by appearing and participating without any objection by the other parties"]; *Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266 ["'because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a

23

litigant may give "express or implied consent to the personal jurisdiction of the court""].)[7]

---

[7] We also question whether Michael and Joseph have standing to assert this argument on behalf of the UCNP entities. (See *City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 678 [a party may appeal "only that portion of the judgment adverse to the appealing party's interest"]; *In re Marriage of Hinman, supra*, 6 Cal.App.4th at p. 719, fn. 3 [an "appellant may only complain of errors which injuriously affect her"]; *Nichols v. Nichols* (1933) 135 Cal.App. 488, 491 [an appellant cannot "urge errors which affect only his coparties who do not appeal, and such errors can be reviewed only at the instance of the parties affected thereby"]; see also *Brenner v. Universal Health Services of Rancho Springs, Inc.* (2017) 12 Cal.App.5th 589, 605 ["As a general rule, a third party does not have standing to bring a claim asserting a violation of someone else's rights."].) After all, as we will discuss, Michael and Joseph argue Leonard lacked standing to assert his cause of action for breach of fiduciary duty for the very reason the alleged violations harmed only the entity defendants, not Leonard. Similarly, Michael and Joseph arguably lack standing to argue on behalf of the UCNP entities that the alternative decree and judgment cannot bind the UCNP entities. Although the buyout statutes give any shareholder aggrieved by an alternative decree standing to appeal the court's decision (§ 2000, subd. (c); § 17707.03, subd. (c)(3); § 15908.02, subd. (d)), Michael and Joseph dismissed their appeal from the alternative decree. And they do not argue on appeal they were injured by the court's exercise of jurisdiction over the UCNP entities.

## 2. *Michael and Joseph Cannot Collaterally Attack the Alternative Decree as a Voidable Order*

As discussed, a party generally may not collaterally attack errors in excess of jurisdiction once the judgment or order is final unless there are "unusual circumstances" that prevented the party from making an "earlier and more appropriate attack." (*American Contractors*, *supra*, 33 Cal.4th at p. 661; see *People v. North River Ins. Co.*, *supra*, 58 Cal.App.5th at p. 311; *Torjesen*, *supra*, 1 Cal.App.5th at p. 118.) No unusual circumstances prevented Michael and Joseph from an earlier attack on the alternative decree.[8] Indeed, Michael and Joseph could have appealed, and did appeal, from the alternative decree, but they dismissed their appeal. And the UCNP entities never objected to their inclusion in the buyout proceeding or appealed from the alternative decree or judgment. (See *Travis v. Brand* (2021) 62 Cal.App.5th 240, 254 [nonparties have standing to appeal where "the judgment has a 'res judicata effect'" or is otherwise binding on the nonparty], review granted June 23, 2021,

---

[8] The January 5, 2017 stipulated order gave Michael and Joseph the right to raise any dispute concerning the proceedings with Judge Meisinger. According to the alternative decree, after the appraisal and valuation process was complete Michael and Joseph asked Judge Meisinger for the first time to make discrete findings on the value of the constituent entities comprising the Sage Automotive Group (which included the UCNP entities). Judge Meisinger denied Michael and Joseph's request "for the reasons stated in the transcript of that hearing." Michael and Joseph do not challenge that aspect of Judge Meisinger's decision or the alternative decree, nor did they include the transcript of the hearing before Judge Meisinger in the record on appeal.

S268480; *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295 [same].)

Moreover, a "party may be precluded from setting aside a voidable act or judgment made in excess of jurisdiction by "'principles of estoppel.'" [Citation.] 'When . . . the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.] Whether he shall be estopped depends on the importance of the irregularity not only to the parties but to the functioning of the courts and in some instances on other considerations of public policy. A litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when "[t]o hold otherwise would permit the parties to trifle with the courts."'" (*Mt. Holyoke Homes, LP v. California Coastal Com.* (2008) 167 Cal.App.4th 830, 842; see *Garibotti v. Hinkle* (2015) 243 Cal.App.4th 470, 481 ["'The doctrine of estoppel to contest jurisdiction . . . "provides that when a court has subject matter jurisdiction over an action, 'a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction.'"'"].)

Michael and Joseph agreed to include the five UCNP entities in the buyout proceeding and did not question the validity of the court's alternative decree for 18 months (when they first raised the issue on appeal from the award of attorneys' fees and costs in *Schrage I*).[9] They are estopped from arguing the

---

[9] In *Schrage I* we rejected Michael and Joseph's argument the alternative decree was void for lack of jurisdiction because

26

trial court acted in excess of its jurisdiction by including the UCNP entities in the alternative decree. (See *Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 166 ["Given that the court had subject matter jurisdiction to determine the parentage of the unborn child, and that [the plaintiff] invoked that jurisdiction, stipulated to the issuance of a judgment, and enjoyed the benefits of that judgment for nearly two years, it would be unfair both to [the defendant] and the child to permit [the plaintiff] to challenge the validity of that judgment."]; *Torjesen, supra*, 1 Cal.App.5th at p. 116 [a court order in excess of jurisdiction "was not subject to collateral attack two years after it was entered"]; *Mt. Holyoke Homes, LP v. California Coastal Com.*, *supra*, 167 Cal.App.4th at p. 842 [applicants could not set aside a voidable judgment where the applicants did not question jurisdiction until three and a half years after the latest date on which it contended the Coastal Commission lost jurisdiction].)

Michael and Joseph attempt to salvage their collateral attack on the alternative decree by asserting they "forewarned the trial court of this jurisdictional impediment" and agreed only to include the UNCP entities in the appraisal, not for purposes of the winding up and dissolution that followed their failure to buy Leonard's interest in the appraised entities. This assertion does not persuade. First, Michael and Joseph's so-called forewarning appeared in their motion to stay the involuntary dissolution causes of action filed six months *before* their stipulation to include the UCNP entities in the appraisal and buyout

_____

they failed to appeal directly from the order, file a motion under Code of Civil Procedure section 473, subdivision (d), or file a collateral action challenging the order. (*Schrage I, supra*, B288478.)

27

proceeding, and it made no mention of the UCNP entities. Second, the plain language of the stipulated order undermines Michael and Joseph's position. It is true the stipulated order lists the UCNP entities as "Entities to be Valued as Part of the Appraisal Engagement," which in turn is defined as "the engagement and qualifications of the appraisers and the appraisal process." But the stipulated order also provides Judge Meisinger was to issue an order stating the cumulative value of Leonard's one-third interest in the Sage Automotive Group, "which shall constitute the buy-out price to be paid by Michael and Joseph to Leonard (the 'Buy-Out Value')," and the order defines the Sage Automotive Group to include the UCNP entities. Thus, Michael and Joseph agreed the amount they had to pay to prevent the winding up and dissolution of the Sage Automotive Group included the value of the UCNP entities. If Michael and Joseph intended only to submit the UCNP entities to the appraisal process, they would not have agreed to an aggregate buyout value that did not differentiate among individual entities, or at least among the entity defendants and the UCNP entities.[10]

---

[10] Michael and Joseph recognize their collateral attack on the consent decree is limited to jurisdictional arguments. (See *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339; *Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950-951.) In a nod to that limitation, Michael and Joseph argue the trial court "exceeded its jurisdiction" by failing to include in the buyout value "the economic impact of Leonard's derivative allegations and prayer in his verified complaint." This is not a jurisdictional argument; it is an argument the trial court made a substantive error in determining the value of the buyout entities. A "mistaken application of law" cannot be collaterally attacked.

28

Michael and Joseph are attempting to unwind the alternative decree on the basis the trial court erred in doing the very thing Michael and Joseph asked the court to do. To approve their belated request would invite the very trifling with the courts the doctrine of estoppel to contest jurisdiction seeks to prevent. (See *Lovett v. Carrasco*, *supra*, 63 Cal.App.4th at pp. 54-55 [allowing a litigant to stipulate to a procedure in excess of jurisdiction and then challenge the procedure on appeal, would permit the parties """"to trifle with the courts"""]; *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics*, *supra*, 61 Cal.App.4th at p. 680 [defendant's stipulation the court could order the parties to arbitration estopped him from attacking arbitration award on that basis]; see also *Kristine H. v. Lisa R.*, *supra*, 37 Cal.4th at p. 166; *Mt. Holyoke Homes, LP v. California Coastal Com.*, *supra*, 167 Cal.App.4th at p. 842; *In re Marriage of Jackson* (2006) 136 Cal.App.4th 980, 989; *Conservatorship of O'Connor*, *supra*, 48 Cal.App.4th at p. 1092.)[11]

---

(*Armstrong*, at pp. 950-951; see *Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 181 Cal.App.4th 752, 767 ["Errors of substantive law are within the jurisdiction of a court and are not typically acts beyond the court's fundamental authority to act."].)

[11] Michael and Joseph listed in their notices of appeal a "Void Judgment" dated September 27, 2017, which was actually the trial court's order appointing a receiver. That order was appealable, and Michael and Joseph did not file a timely notice of appeal. (See Code Civ. Proc., § 904.1, subd. (a)(7); *Wells Fargo Financial Leasing, Inc. v. D & M Cabinets* (2009) 177 Cal.App.4th 59, 66.) Because Michael and Joseph do not argue the order was void, except as a consequence of the court's lack of jurisdiction to

C.    *Leonard Lacked Standing To Assert His Cause of
      Action for Breach of Fiduciary Duty*

Michael and Joseph contend Leonard did not have standing to assert an individual cause of action against them for breach of fiduciary duty because Leonard sought and received an award of damages to the Sage Automotive Group and not to himself. Leonard contends that he suffered an individual injury and that, in any event, close corporations like those comprising the Sage Automotive Group are not subject to the derivative action rule. Michael and Joseph have the better argument: The allegations in Leonard's complaint, the evidence at trial, and the court's findings show Leonard's causes of action were derivative.

---

enter the alternative decree, we do not have jurisdiction to consider any appeal from the September 27, 2017 order and must dismiss the appeal from that order. (See *City of Calexico v. Bergeson* (2021) 64 Cal.App.5th 180, 189.) And even if we had jurisdiction, Michael and Joseph forfeited the argument by failing to support it in their briefs with any argument or citation to authority. (See *Rios v. Singh* (2021) 65 Cal.App.5th 871, 881; Cal. Rules of Court, rule 8.204(a)(1)(B) [briefs must support each point by argument and, if possible, by citation of authority].) And, even if we considered the argument on the merits, it would fail for the same reasons the argument concerning the alternative decree fails.

Michael and Joseph also appeal from the trial court's postjudgment order denying their motion to set aside the judgment under Code of Civil Procedure sections 663 and 663a on the same grounds. That order is appealable. (See *Ryan v. Rosenfeld* (2017) 3 Cal.5th 124, 131-135.) We affirm it for the same reasons we affirm the judgment of dissolution.

1.    *Applicable Law*

"[M]ajority shareholders, either singly or acting in concert to accomplish a joint purpose, have a fiduciary responsibility to the minority and to the corporation to use their ability to control the corporation in a fair, just, and equitable manner.  Majority shareholders may not use their power to control corporate activities to benefit themselves alone or in a manner detrimental to the minority.  Any use to which they put the corporation or their power to control the corporation must benefit all shareholders proportionately and must not conflict with the proper conduct of the corporation's business." (*Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 108 (*Jones*); accord, *Sheley v. Harrop* (2017) 9 Cal.App.5th 1147, 1171; see § 17704.09 [describing the fiduciary duties of members and managers of a limited liability company]; *Feresi v. The Livery, LLC* (2014) 232 Cal.App.4th 419, 425 [same]; *Everest Investors 8 v. McNeil Partners* (2003) 114 Cal.App.4th 411, 424-425 [describing the fiduciary obligations in a partnership].)

A minority shareholder may bring a cause of action for breach of fiduciary duty against majority shareholders as an individual claim or as a derivative claim, depending on the circumstances.  (See *Daly v. Yessne* (2005) 131 Cal.App.4th 52, 63; *Jara v. Suprema Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1252-1253, 1257-1258 (*Jara*); see also *Sutter v. General Petroleum Corp.* (1946) 28 Cal.2d 525, 530 ["a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong"]; *Goles v. Sawhney* (2016) 5 Cal.App.5th 1014, 1018, fn. 3 ["A single cause of action by a shareholder can give rise to derivative claims, individual claims, or both."]; *Denevi v. LGCC,*

31

*LLC* (2004) 121 Cal.App.4th 1211, 1222 [same].)  But where a cause of action seeks to recover for harms to the corporation, the shareholders have no direct cause of action "[b]ecause a corporation exists as a separate legal entity" (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108 (*Grosset*)) and "is the ultimate beneficiary of such a derivative suit" (*Patrick v. Alacer Corp.* (2008) 167 Cal.App.4th 995, 1003).  (See *Cotton v. Expo Power Systems, Inc.*, *supra*, 170 Cal.App.4th at p. 1380 ["A derivative claim is a property right that belongs to the corporation."].)

"The shareholders may, however, bring a derivative suit to enforce the corporation's rights and redress its injuries when the board of directors fails or refuses to do so.  When a derivative suit is brought to litigate the rights of the corporation, the corporation is an indispensable party and must be joined as a nominal defendant."  (*Grosset*, *supra*, 42 Cal.4th at p. 1108; accord, *Jones*, *supra*, 1 Cal.3d at pp. 106-107; see *Patrick v. Alacer Corp.*, *supra*, 167 Cal.App.4th at p. 1004 ["Though the corporation is essentially the plaintiff in a derivative action, '[w]hen a derivative suit is brought to litigate the rights of the corporation, the corporation . . . must be joined as a nominal defendant.'"].)

"An action is deemed derivative "'if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'"  [Citation.]  When a derivative action is successful, the corporation is the only party that benefits from any recovery; the shareholders derive no benefit "'except the indirect benefit resulting from a realization upon the corporation's assets.'"'"  (*Grosset*, *supra*, 42 Cal.4th at p. 1108, fn. omitted; see *Bader v.*

32

*Anderson* (2009) 179 Cal.App.4th 775, 793 ["a derivative suit is one in which the shareholder seeks 'redress of the wrong to the corporation'"].)

"'The stockholder's individual suit, on the other hand, is a suit to enforce a right against the corporation which the stockholder possesses as an individual.'" (*Jones*, *supra*, 1 Cal.3d at p. 107; see *Bader v. Anderson*, *supra*, 179 Cal.App.4th at p. 793; *Denevi v. LGCC, LLC*, *supra*, 121 Cal.App.4th at p. 1222.) For example, "'[i]f the injury is one to the plaintiff as a stockholder and to him individually, and not to the corporation, as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly, it is an individual action.'" (*Sutter v. General Petroleum Corp.*, *supra*, 28 Cal.2d at p. 530.) "The individual wrong necessary to support a suit by a shareholder need not be unique to that plaintiff. The same injury may affect a substantial number of shareholders. If the injury is not incidental to an injury to the corporation, an individual cause of action exists." (*Jones*, *supra*, 1 Cal.3d at p. 107; see *Bader*, at p. 793 ["A direct (as opposed to a derivative) action is maintainable 'only if the damages [are] not *incidental* to an injury to the corporation.'"]; see also *Schuster v. Gardner* (2005) 127 Cal.App.4th 305, 313; *Denevi*, at p. 1222; *Nelson v. Anderson* (1999) 72 Cal.App.4th 111, 124 (*Nelson*).)

The principles governing derivative actions in the context of corporations apply to limited liability companies and limited partnerships. (See *Sprengel v. Zbylut* (2019) 40 Cal.App.5th 1028, 1040-1041 [limited liability company]; *Everest Investors 8 v. McNeil Partners*, *supra*, 114 Cal.App.4th at pp. 425-426 [limited partnership].) We review de novo the trial court's ruling Leonard

33

had standing to maintain his cause of action for breach of fiduciary duty as an individual claim, rather than a derivative claim.  (See *A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687 [standing is a question of law to which we apply a de novo standard of review]; *Citizens for Amending Proposition L v. City of Pomona* (2018) 28 Cal.App.5th 1159, 1174 [same].)

### 2. *Leonard Sought and Recovered Damages for Injuries to the Sage Automotive Group*

Leonard alleged Michael and Joseph committed a wide variety of misdeeds, including "misappropriat[ing] at least $1.7 million of company funds" to open, advertise, and operate a Lotus dealership without Leonard's consent or participation; mismanaging the Sage Automotive Group by engaging in "dishonest and manipulative accounting practices"; using Sage Automotive Group assets for personal gain; undermining Leonard's authority with Sage Automotive Group employees; denying Leonard access to Sage Automotive Group's books, records, and bank accounts; ceasing payment for directors and officers insurance coverage; and rebranding the Sage Automotive Group without Leonard's consent.  Leonard alleged these acts "significantly impeded Leonard's ability to manage or participate in the affairs of the [Sage Automotive Group]," "caused damage to the [Sage Automotive Group,] and devalued his interest in turn."

At trial, Leonard's expert witness on damages, Gordon Klein, calculated Leonard's damages as one-third the difference between the 2015 court-approved valuation in the alternative decree and the value of the Sage Automotive Group at the time of trial, adjusted for market changes.  Klein reviewed the

34

dealerships' financial statements "to ascertain the diminution in value which ha[d] occurred" and concluded they collectively had declined in value over $65 million since April 2015. Klein attributed additional losses to a $3.6 million settlement with the Federal Trade Commission that arose from alleged misconduct by Michael and Joseph, "[e]xcess payments" to accountants and lawyers, and a reserve of $6 million for the anticipated settlement of a warranty fraud case brought by Nissan Motor Company against Michael and Joseph. Klein opined the total "loss in value" of the Sage Automotive Group was over $75 million, of which one-third, or approximately $25 million, was "[s]uffered by [Leonard]" because he owned one-third of the businesses. Klein estimated that, depending on the court's findings, losses due to market forces not attributable to Michael and Joseph's "alleged mismanagement" could reduce Leonard's damages to about $18 million. For this reason, Klein determined Leonard's damages were between $18,311,746 and $24,418,473.

Klein also testified he did not include in his analysis any amounts for Leonard's claims against Michael and Joseph for "'personal misappropriations'" or "personal aggrandizement," which Klein defined as "taking economic benefits or sums that are outside the ordinary course of business and/or were not expenses incurred for the economic benefit of the business or its partners." Klein also said he did not analyze whether using Sage Automotive Group funds to seed the Lotus dealership caused specific losses to the Group. Klein said the scope of his assignment was to focus on, "at the core, the diminution in the value of the dealerships, plus . . . avoidable liabilities and payments that, but for alleged misconduct . . . , should not have happened and, therefore, result[ed] in damages."

The trial court, in its statement of decision, found Michael and Joseph "pushed [Leonard] out" of the Sage Automotive Group, leaving him no "meaningful control over its operations"; engaged in self-dealing by diverting Sage Automotive Group funds to the separately held Lotus dealership; expended Sage Automotive Group assets without authorization; engaged in false advertising that led to the settlement with the Federal Trade Commission and a "dramatic drop in profit[s]"; and left the Sage Automotive Group in such "financial turmoil" that some of its assets had to be sold to a competitor. The trial court credited Klein's damages analysis and awarded Leonard the upper end of Klein's range (i.e., $24,418,472), "given the defense's total failure to substantiate market causes for the precipitous and undisputed decline" in the Sage Automotive Group's value, offset by losses attributable to Leonard's unclean hands.

The allegations in Leonard's first amended complaint, the basis and calculation of Leonard's damages at trial, and the court's findings show that the gravamen of Leonard's action was injury to the Sage Automotive Group and the "whole body of its stock and property" and that Leonard sought to, and ultimately did, recover damages for injuries to the entities. (*Grosset*, *supra*, 42 Cal.4th at p. 1108; see *Avikian v. WTC Financial Corp.* (2002) 98 Cal.App.4th 1108, 1115 (*Avikian*) [plaintiffs' "core claim" of mismanagement that caused the corporation's demise "amount[ed] to a claim of injury to [the corporation] itself"]; *Nelson*, *supra*, 72 Cal.App.4th at p. 127 ["the action must be derivative" where the defendant's actions caused the corporation to lose "earnings, profits, and opportunities, rendering *all* the shares valueless"].) Leonard did not allege, and the trial court did not award, damages for any injury that was not "incidental to

36

an injury to the corporation." (*Jones*, *supra*, 1 Cal.3d at p. 107; see *ibid.* [although the plaintiff alleged "the value of her stock [was] diminished by defendants' actions," she did not allege "the diminished value reflect[ed] an injury to the corporation and resultant depreciation in the value of the stock"]; *Avikian*, at p. 1116 [the plaintiffs' "own damages, the loss in value of their investments in [the corporation], were merely incidental to the alleged harm inflicted upon [the corporation] and all its shareholders," italics omitted].)

Indeed, Leonard's primary complaint was that his brothers' mismanagement (including by driving him out of the Sage Automotive Group) squandered the Sage Automotive Group's assets and ultimately led to its demise. That is a derivative claim. "[W]here conduct, including mismanagement by corporate officers, causes damage to the corporation, it is the entity that must bring suit; the individual shareholder may not bring an action for indirect personal losses (i.e., decrease in stock value) sustained as a result of the overall harm to the entity." (*Bader v. Anderson*, *supra*, 179 Cal.App.4th at p. 788; see *Heshejin v. Rostami* (2020) 54 Cal.App.5th 984, 994, fn. 10 [""a shareholder *cannot* bring a direct action for damages against management on the theory their alleged wrongdoing decreased the value of his or her stock (e.g., by reducing corporate assets and net worth)""]; instead, the ""corporation itself must bring such an action, or a derivative suit may be brought on the corporation's behalf""]; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 651 [plaintiff's breach of fiduciary duty claim for corporate mismanagement and diverting corporate assets was derivative]; *PacLink Communications Internat., Inc. v. Superior Court* (2001) 90 Cal.App.4th 958, 964 [minority

37

members' fraudulent transfer claim was derivative where the "injury was essentially a diminution in the value of their membership interest in the [limited liability company] occasioned by the loss of the company's assets"]; *Nelson*, *supra*, 72 Cal.App.4th at pp. 125-126 [minority shareholder's breach of fiduciary duty claim alleging the other shareholder of the corporation negligently managed the business was derivative]; Marsh et al., Marsh's Cal. Corp. Law (2021 supp.) Derivative Action, § 15.11[A][1] ["The clearest cases [of derivative actions] are those involving situations where the alleged wrongful actions of the defendants have reduced the corporate assets and net worth."].)

Leonard makes two arguments to show his cause of action for breach of fiduciary duty was an individual claim. First, Leonard lists 10 injuries that he says "hurt [him] alone." None of the listed injuries, however, caused a discrete injury or damages to Leonard. Five of the listed injuries affected or reduced corporate assets or value without creating any nonincidental injuries to Leonard: (1) destruction of a document "related to personal spending using [Sage Automotive Group] funds"; (2) exclusion of Leonard from operational decisions; (3) falsification of corporate records and decisionmaking without Leonard's input; (4) falsification of Leonard's signature on an application to purchase a Hyundai dealership;[12] and (5) the purchase of the Hyundai dealership without consulting

---

[12] Leonard presumably could allege an individual injury as a result of identity theft, but he did not, and the court did not award any damages for identity theft or similar injury.

38

Leonard.[13] Two injuries listed by Leonard—(6) instruction to Sage Automotive Group's counsel to file a cross-complaint against Leonard, requiring Leonard "to 'pay for a lawsuit against himself,'" and (7) use of the cross-complaint "as a 'pretextual threat to remove Leonard as a board member'"—were cited by the trial court as evidence of Michael and Joseph's oppression in support of the award of punitive damages; they were not bases for the compensatory damages award.

Another listed injury—(8) failure to honor the wish of the brothers' father to make Leonard the majority owner of the Sage Automotive Group—is conduct ascribed to Sage Automotive Group's (or their father's) lawyer, not to Michael and Joseph; and another—(9) issuance of unequal distribution checks—is contradicted by the court's statement of decision, which acknowledged that Leonard eventually received the missing distribution check, albeit six weeks after Michael and Joseph received theirs. That leaves (10), Leonard's claim he suffered discrete injuries when Michael and Joseph reneged on their promise "'to "indemnify" Leonard'" for losses related to the Lotus dealership separately held by Michael and Joseph. The promise apparently flowed from the two brothers' recognition they used Sage Automotive Group funds to seed the new Lotus dealership. Even if Michael and Joseph's failure to indemnify Leonard and

---

[13] In connection with the withholding of books and records, Leonard did not allege his inability to inspect company records precluded him from discharging his fiduciary duty or attempting to enforce his inspection rights under section 1601 or 1602. (See generally *Wolf v. CDS Devco* (2010) 185 Cal.App.4th 903, 916; *Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844, 1856.)

make him whole created an individual injury, the court awarded Leonard damages based on the overall diminution in value to the Sage Automotive Group, not the amount Michael and Joseph owed Leonard from funds used to start a separately owned venture.

Second, Leonard argues we should follow the decision in *Jara*, which, according to Leonard, "support[ed] the notion that the policy reasons undergirding the rule requiring shareholder lawsuits to proceed derivatively do not apply to actions involving closely held businesses" like the Sage Automotive Group. In *Jara* the minority shareholder of a corporation alleged the two other shareholders breached their fiduciary obligations by paying themselves excessive executive compensation without the plaintiff's approval and for the purpose of reducing the amount of profit to be shared with the plaintiff. (*Jara, supra,* 121 Cal.App.4th at pp. 1248, 1258.) The plaintiff did not allege the two majority shareholders mismanaged the corporation; in fact, the corporation's success enabled the majority shareholders to increase their executive compensation. (*Id.* at p. 1247.)

The court in *Jara* held that, while "the alleged payment of excessive compensation did have the potential of damaging the business," the plaintiff stated an individual cause of action against the majority shareholders because he alleged the payment of executive compensation "was a device to distribute a disproportionate share of the profits to the two officer shareholders during a period of business success." (*Jara, supra,* 121 Cal.App.4th at p. 1258.) The court read the Supreme Court's decision in *Jones* to allow "a minority shareholder to bring a personal action alleging 'a majority stockholders' breach of a fiduciary duty to minority stockholders, which resulted in the

40

majority stockholders retaining a disproportionate share of the corporation's ongoing value.'" (*Jara*, at pp. 1257-1258; see *Jones*, *supra*, 1 Cal.3d at p. 107; see also *Crain v. Electronic Memories & Magnetics Corp.* (1975) 50 Cal.App.3d 509, 521-522 [breach of fiduciary cause of action against a majority shareholder for self-dealing that enriched the majority shareholder and left minority shares "valueless and unsalable" was an individual claim].)

We have some doubt whether *Jara* was correctly decided. At a minimum, however, it is distinguishable. The court in *Jara* characterized the plaintiff's claim as "tantamount to a discriminatory payment of dividends" and cited cases allowing individual causes of action to recover the value of disproportionate payments to majority shareholders. (*Jara*, *supra*, 121 Cal.App.4th at pp. 1256-1257, citing *Smith v. Tele-Communication, Inc.* (1982) 134 Cal.App.3d 338, 341-342 [majority shareholders retained disproportionate value of tax savings]; *Crain v. Electronic Memories & Magnetics Corp.*, *supra*, 50 Cal.App.3d at p. 521 [majority shareholder "deprived plaintiffs of their ownership interests in an ongoing and potentially profitable business without any compensation whatsoever"]; *Low v. Wheeler* (1962) 207 Cal.App.2d 477, 479 [majority shareholders "refused to declare dividends" to minority shareholder]; *De Martini v. Scavenger's Protective Assn.* (1935) 3 Cal.App.2d 691, 698 [majority shareholders deprived the minority shareholders of their "'share of the profits of the business'"].)

The *Jara* court distinguished the circumstances in these cases from those in cases "dealing with mismanagement," such as *Avikian*, *supra*, 98 Cal.App.4th 1108 and *Nelson*, *supra*, 72 Cal.App.4th 111. (*Jara*, *supra*, 121 Cal.App.4th at p. 1258.) In *Avikian* a group of minority shareholders alleged the majority

41

shareholders improperly bought and sold assets of the corporation and, with the corporation in financial distress, chose to pursue a "self-serving arrangement[ ] causing the demise of [the corporation]," rather than accepting an investor who was "willing to rescue" the corporation. (*Avikian*, at pp. 1115-1116.) The court in *Avikian* held that these alleged acts harmed the corporation rather than merely "affect[ing] the way in which the parties owned it" (*id.* at p. 1115) and that, because the plaintiffs' damages were "the loss in value of their investments in [the corporation]," their damages were "merely incidental to the alleged harm inflicted upon [the corporation] *and all its shareholders*" (*id.* at pp. 1115-1116). In *Nelson* a minority shareholder sued the majority shareholder for breach of fiduciary duty after the majority shareholder made "improper management decisions," causing the minority shareholder "to lose her investment and prospective profits." (*Nelson*, at p. 124.) The minority shareholder argued she could bring an individual cause of action because she "suffered injury to her reputation and emotional distress, and lost her out-of-pocket expenses, as well as other employment opportunities." (*Ibid.*) The court in *Nelson* disagreed: "Because all of the acts alleged to have caused [the plaintiff's] injury amount to alleged misfeasance or negligence in managing the corporation's business, causing the business to be a total failure, any [fiduciary] obligations so violated were duties owed directly and immediately to the corporation." (*Id.* at p. 125.) Moreover, "[t]he economic damages proven at trial were lost profits to the corporation as the result of rejected opportunities." (*Id.* at p. 126.)

This case is more like *Avikian* and *Nelson* than *Jara*. Unlike the plaintiff in *Jara*, Leonard did not allege Michael and

42

Joseph retained a disproportionate share of the Sage Automotive Group's value; he alleged Michael and Joseph destroyed the value of the businesses for all of the shareholders (and members and partners). The court awarded Leonard damages based on the overall diminution in value of the Sage Automotive Group, not the difference in value between Leonard's shares in the Group and those of Michael and Joseph. (Cf. *Jara*, *supra*, 121 Cal.App.4th at p. 1258 [describing the plaintiff's damages as his "fair share of the corporation's profits"]; see also *Jones*, *supra*, 1 Cal.3d at p. 107 [the diminution in value of the minority shareholders' stock did not "reflect[ ] an injury to the corporation," but instead resulted from the majority shareholders' self-serving scheme to increase the value of their shares]; *Smith v. Tele-Communication, Inc.*, *supra*, 134 Cal.App.3d at p. 342 [plaintiff was "deprived of a portion of his distributive share of [the corporation]"].) Similar to the plaintiffs' allegations in *Avikian* and *Nelson*, Leonard alleged that his brothers' mismanagement diminished the value of the Sage Automotive Group overall and that the value of each of their interests, "in turn," suffered accordingly. That Klein computed Leonard's damages by dividing the Sage Automotive Group's overall diminution of value by three confirms the gravamen of Leonard's complaint was injury to the corporation as a whole, ""without any severance or distribution among individual holders,"" and not to Leonard individually. (*Grosset*, *supra*, 42 Cal.4th at p. 1108; see *Avikian*, *supra*, 98 Cal.App.4th at p. 1116.)

The court in *Jara* also relied on the absence of policy considerations favoring a derivative action in the context of that case, including preventing "'a multiplicity of actions by each individual shareholder,'" protecting creditors "'who have first call

43

on the corporate assets,'" and complying with procedural prerequisites for bringing a derivative action under section 800.[14] (*Jara*, *supra*, 121 Cal.App.4th at pp. 1258-1259.)  Section 800, the court stated, "shield[s] the corporation from meritless lawsuits by requiring the plaintiffs to have contemporaneous stock ownership and by giving the defendants the right to move the court for an order requiring a bond" and "requires the plaintiffs to submit a demand to the board of directors before filing suit" to encourage the "'intracorporate resolution of disputes'" and protect "'managerial freedom.'"  (*Jara*, at p. 1259; see § 800, subds. (b) & (c).)  The court in *Jara* observed:  "The objective of preventing a multiplicity of lawsuits and assuring equal treatment for all aggrieved shareholders does not arise at all when there is only one minority shareholder.  The objective of encouraging intracorporate resolution of disputes and protecting managerial freedom is entirely meaningless where the defendants constitute the entire complement of the board of directors and all the corporate officers.  And the policy of

---

[14] Section 800 states the procedural prerequisites to bringing a derivative action against a corporation.  In general, section 800, subdivision (b), requires a shareholder to inform the directors about the action and to "make a reasonable effort to induce them to commence suit themselves or otherwise redress the wrong, unless such efforts would be 'useless' or 'futile.'"  (Friedman et al., Cal. Practice Guide: Corporations (The Rutter Group 2021 supp.) ¶ 6:622; see § 800, subd. (b)(2).)  Section 800, subdivision (c), gives the corporation and its directors the right to ask the court to require a bond under certain circumstances.  Sections 17709.02 and 15910.02 provide similar procedural requirements for derivative actions on behalf of limited liability companies and limited partnerships, respectively.

preserving corporate assets for the benefit of creditors has, at best, a very weak application where the corporation remains a viable business." (*Jara*, at p. 1259.)

The court in *Nelson* also considered whether the policies advanced by the derivative action rule applied in the context of close corporations and reached the opposite conclusion.  The court stated:  "A derivative action may appear to [the plaintiff] to be an empty formality when there are only two shareholders, and one of them is the alleged wrongdoer.  However, the law demands certain prerequisites to bringing a derivative action which have not been alleged or proven in this case, such as alleging 'in the complaint with particularity[, the] plaintiff's efforts to secure from the board such action as plaintiff desires, or the reasons for not making such effort, and . . . further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file.'" (*Nelson*, *supra*, 72 Cal.App.4th at p. 127.)

We acknowledge the policies underlying the derivative action rule do not apply with equal force in actions involving closely held companies.  Requiring Leonard to name the entities that comprise the Sage Automotive Group (and the UCNP entities) as nominal defendants in this action will not prevent a multiplicity of lawsuits or assure equal treatment for all aggrieved shareholders.  And the objective of encouraging intracorporate resolution of disputes and protecting managerial freedom has less meaning where Michael, Joseph, and Leonard constitute the board of directors and corporate officers.  (See *Jara*, *supra*, 121 Cal.App.4th at p. 1259.)  But the plain language

45

of sections 800, 15910.02, and 17709.02 does not exclude close corporations or small partnerships or companies from the procedural prerequisites before a shareholder, limited partner, or member may file a derivative action. (See *Nelson*, *supra*, 72 Cal.App.4th at p. 127.) To allow Leonard to maintain his cause of action for breach of fiduciary duty as an individual action would essentially eliminate the derivative action rule in the context of close corporations and other closely held entities. California law does not support that result.

> 3. *Leonard Did Not Allege a Derivative Cause of Action or Comply with the Statutory Prerequisites To Bring Such an Action*

Leonard did not allege a derivative cause of action on behalf of the Sage Automotive Group (or any of its constituent entities) or attempt to comply with the requirements of sections 800, 15910.02, or 17709.02 to do so. Therefore, Leonard did not have standing to bring such an action, and the judgment on the cause of action for breach of fiduciary duty must be reversed. (See *Bader v. Anderson*, *supra*, 179 Cal.App.4th at p. 793; *Nelson*, *supra*, 72 Cal.App.4th at pp. 127-128.)

## DISPOSITION

The judgment on the causes of action for involuntary dissolution is modified, consistent with *Schrage I*, to correct the amount in favor of Leonard Schrage to $401,509.50 and, as modified, is affirmed.  The order denying Michael and Joseph's motion to set aside the judgment is affirmed.  The appeals from the alternative decree and the order appointing the referee are dismissed.  The judgment on the cause of action for breach of fiduciary duty is reversed.  The parties are to bear their costs on appeal.


SEGAL, J.


We concur:


PERLUSS, P. J.


FEUER, J.


47

Filed 9/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEONARD SCHRAGE, Plaintiff and Respondent, v. MICHAEL SCHRAGE et al., Defendants and Appellants. | B298119 (Los Angeles County Super. Ct. No. BC579623) **ORDER CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN APPELLATE JUDGMENT]** |

THE COURT:

The opinion in this case filed September 2, 2021 was not certified for publication.  Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the respondent's request for publication under California Rules of Court, rule 8.1120(a), is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

| | | |
|---|---|---|
| PERLUSS, P. J. | SEGAL, J. | FEUER, J. |